CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
¶1 On March 25, 1999,this Court accepted jurisdiction of this application for writ of supervisory control over the Sixteenth Judicial District Court, Custer County. We invited briefs by amicus curiae and classified the case for oral argument. We now vacate the District Court’s determination that documents sought to be discovered by the petitioner, the Estate of George Huether, Jr., are not discoverable under the hospital peer review statutes codified at Title 50, Chapter 16, *214 part 2, MCA, and remand for further proceedings consistent with this Opinion.
¶2 The issue is whether the District Court erred in denying the Estate’s discovery request pursuant to Title 50, Chapter 16, part 2, MCA, and this Court’s opinion in Sistok v. Kalispell Regional Hosp. (1991), 251 Mont. 38, 823 P.2d 251.
¶3 In June 1992, seventy-eight year old George Huether, Jr., underwent surgery for colon cancer at Holy Rosary Hospital in Miles City, Montana. An hour after being returned to the surgical floor from the recovery room, Huether stopped breathing. Although he was successfully resuscitated, he suffered severe brain damage and died when he was taken off life support a few days later.
¶4 Huether’s son, as the personal representative of his estate, filed a wrongful death action against the Hospital, asserting that the Hospital staff did not monitor Huether closely enough following his surgery. As part of discovery, the Estate asked the Hospital to produce “any incident reports or similar reports prepared with regard to any aspect of the care and treatment of George Huether, Jr., while a patient at Holy Rosary Hospital.” Specifically, the Estate was interested in any documents indicating that Huether’s vital signs were being recorded at least every fifteen minutes by an automatic monitor called a “Critikon.”
¶5 The Hospital objected to the discovery request on grounds that any such documents would not be subject to discovery under §§ 50-16-201 through -205, MCA, which provide for confidentiality of information and proceedings of in-hospital medical staff committees, also known as peer review committees. The Estate moved to compel production in compliance with its request. The District Court denied the motion to compel, reasoning that the privilege for data of hospital peer review committees, as set forth in the above statutes and interpreted in this Court’s Sistok opinion, is absolute.
¶6 The Estate filed an application for this Court’s supervisory control. At the Court’s invitation, five amicus curiae briefs were submitted prior to the oral argument.
Discussion
¶7 Did the District Court err in denying the Estate’s discovery request pursuant to Title 50, Chapter 16, part 2, MCA, and this Court’s opinion in Sistok v. Kalispell Regional Hosp. (1991), 251 Mont. 38, 823 P.2d 251?
*215 ¶8 The Estate argues that the District Court’s order denying the motion to compel gives unconstitutional application to Title 50, Chapter 16, part 2, MCA. It asks this Court to clarify whether Sistok stands for the rule that an absolute privilege surrounds medical staff committees, and, if so, to expressly overrule Sistok or to declare that Title 50, Chapter 16, part 2, MCA, violates the right of access to the courts as set forth at Article II, Section 16 of the Montana Constitution.
¶9 Montana’s hospital peer review statutes are typical of the statutes adopted by various states to encourage candor in hospital staff committees which review and evaluate the quality of medical care provided in their hospitals. The goal is to promote continuous improvement in the quality of health care delivery through review of standardized health care operations and the performance of doctors and staff. See Sistok, 251 Mont. at 40-41, 823 P.2d at 253; American Medical Association, A Compendium of State Peer Review Immunity Laws (1988 & Supp. 1994); Charles D. Creech, The Medical Review Committee Privilege: A Jurisdictional Survey, 67 N.C.L. Rev. 179 (1988). Because the language used in statutes is the first basis for their interpretation, we set forth Title 50, Chapter 16, part 2, MCA, in its entirety:
50-16-201. Data defined. As used in this part, “data” means written reports, notes, or records of tissue committees or other medical staff committees in connection with the professional training, supervision, or discipline of the medical staff of hospitals.
50-16-202. Committees to have access to information. It is in the interest of public health and patient medical care that in-hospital medical staff committees have access to the records, information, and other data relating to the condition and treatment of patients in such hospital to study and evaluate for the purpose of evaluating matters relating to the care and treatment of such patients for research purposes and for the purpose of reducing morbidity or mortality and obtaining statistics and information relating to the prevention and treatment of diseases, illnesses, and injuries. To carry out such purposes, any hospital, its agents and employees may provide medical records, information, or other data relating to the condition and treatment of any patient in said hospital to any in-hospital medical staff committee.
50-16-203. Committee information and proceedings confidential and privileged. All such records, data, and information shall be confidential and privileged to said committee and the *216 members thereof, as though such hospital patients were the patients of the members of such committee. All proceedings and in-hospital records and reports of such medical staff committees shall be confidential and privileged.
50-16-204. Restrictions on use or publication of information. Such in-hospital medical staff committees shall use or publish information from such material only for the purpose of evaluating matters of medical care, therapy, and treatment for research and statistical purposes. Neither such in-hospital medical staff committee nor the members, agents, or employees thereof shall disclose the name or identity of any patient whose records have been studied in any report or publication of findings and conclusions of such committee, but such in-hospital medical staff committee, its members, agents, or employees shall protect the identity of any patient whose condition or treatment has been studied and shall not disclose or reveal the name of any such in-hospital patient.
50-16-205. Data confidential — inadmissible in judicial proceedings. All data shall be confidential and shall not be admissible in evidence in any judicial proceeding, but this section shall not affect the admissibility in evidence of records dealing with the patient’s hospital care and treatment.
¶10 Sistok represented this Court’s first opportunity to interpret Montana’s hospital peer review statutes. In that case, Victor Sistok brought suit against the Kalispell Regional Hospital, arguing that the hospital negligently allowed a doctor with a history of alcoholism to perform surgery upon him. In connection with his lawsuit, Sistok sought to depose the former chairman of the hospital committee charged with supervision and discipline of the medical staff, and to discover records and information concerning the committee’s prior actions taken against the doctor.
¶11 This Court held that Sistok’s deposition subpoena sought information that was clearly privileged and that the District Court had properly quashed the discovery request. In the context presented, the Court stated that § 50-16-203, MCA, “unambiguously confers an absolute privilege on medical staff committees.” Sistok, 251 Mont. at 40, 823 P.2d at 253.
¶12 The District Court concluded that this Court’s opinion in Sistok governs in the present case. We disagree. As counsel conceded at oral argument, the facts in Sistok are clearly distinguishable from those in *217 the present case. The records which plaintiff Sistok sought to discover concerned prior disciplinary actions taken against his treating physician. In contrast, the records sought in the present case relate to the care and treatment of the plaintiff Estate’s decedent.
¶13 This Court’s role in statutory construction is to “ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. Section 50-16-205, MCA, provides that “data” of medical staff committees shall be confidential and not admissible in evidence, ‘Taut this section shall not affect the admissibility in evidence of records dealing with the patient’s hospital care and treatment.” The right of confidentiality created under § 50-16-205, MCA, is plainly subject to the patient’s right of access to records concerning his or her own hospital care and treatment.
¶14 This is consistent with the provisions of another segment of Montana law, the Uniform Health Care Information Act (the Act), enacted in 1987. The Act enumerates patients’ rights, including the right to examine or copy all or part of the patient’s recorded health care information. See § 50-16-541, MCA. “Health care information” is any information relating to the patient’s health care, to which the patient’s right will not be diminished no matter who else had access to the identical records. See §§ 50-16-502(4) and -504(6), MCA. The Act further provides, at § 50-16-522, MCA, that “[a] personal representative of a deceased patient may exercise all of the deceased patient’s rights under this part.” Therefore, under the Act, the Estate has the right to examine or copy all of Huether’s recorded health care information.
¶ 15 Amici point out that peer review committees do not themselves create evidence of what took place in the treatment of a patient. That evidence exists, instead, in the medical record of the patient and in the memories of those who provided treatment, all of which is discoverable and admissible under § 50-16-205, MCA. Such evidence is not shielded from discovery when given to a peer review committee.
¶16 Section 50-16-203, MCA, analogizes the confidentiality of peer review committee proceedings to the confidentiality between a doctor and a patient. It is argued that we may thus assume that a patient has the option of “waiving” the confidentiality of peer review records, like a patient has the option of waiving confidentiality with his or her physician. See § 50-16-526, MCA. However, under § 50-16-542(1)(d), MCA, a health care provider may deny a patient access to health care *218 information “compiled and... used solely for litigation, quality assurance, peer review, or administrative purposes.” Were we to accept the argument that a patient has a wholesale right to “waive” the confidentiality of peer review, § 50-16-542(1)(d), MCA, would be rendered meaningless.
¶17 We here note an inconsistency. Section 50-16-542(1)(d), MCA, while not a subject of this appeal, on its face allows a health care provider to deny a patient access to “health care information” used solely for peer review, among other purposes. The statute’s use of the term “health care information” is troubling. The denial of access to “health care information” allowed under § 50-16-542(1)(d), MCA, conflicts with the provisions of the peer review statutes as we have interpreted them above, as well as with the very purpose of the Uniform Health Care Information Act, as set forth at § 50-16-502(2), MCA (“patients need access to their own health care information as a matter of fairness, to enable them to make informed decisions about their health care and to correct inaccurate or incomplete information about themselves”). We bring this conflict to the attention of the Montana legislature and invite its consideration in reconciling the conflict.
¶ 18 We conclude that the net effect of the peer review statutes is that “health care information” belongs both to the patient and to the hospital, while “data” is a matter of internal administrative function. Accordingly, we conclude that all “health care information” either reviewed or generated by medical staff committees should be made available to the subject patient. Only the “data” are protected from disclosure. Section 50-16-201, MCA, defines the “data,” which “shall be confidential,” as:
written reports, notes, or records of tissue committees or other medical staff committees in connection with the professional training, supervision, or discipline of the medical staff of hospitals.
(Emphasis supplied.) Thus, for example, an “incident report” including a retrospective report of what occurred in the course of a hospital patient’s care and treatment would be discoverable by the patient. Records of the discussion and recommendations of a peer review committee as to professional training, supervision, or discipline as a result of such an incident and report would not be discoverable.
¶19 Because the records sought in Sistok related to prior disciplinary action by the hospital against Sistok’s surgeon, they clearly met the definition of “data” and were not subject to discovery. However, to the extent that the records sought by the Estate in this case relate to *219 Huether’s hospital care and treatment, they do not fall within the definition of “data.” Such records are subject to discovery by the patient or, as here, by the patient’s estate. The statements in Sistok that § 50-16-203, MCA, “unambiguously confers an absolute privilege on medical staff committees,” 251 Mont. at 40, 823 P.2d at 253, and “confers an absolute privilege,” 251 Mont. at 41, 823 P.2d at 253, are limited to the facts of that case and are overruled inasmuch as they may be read to apply to a hospital patient seeking disclosure of information concerning his or her care and treatment.
¶20 In so ruling, we realize that we are limiting the meaning of the last sentence of § 50-16-203, MCA: “All proceedings and in-hospital records and reports of such medical staff committees shall be confidential and privileged.” This is necessary to give effect to all of the statutes discussed above. As we have stated:
[W]e presume that the legislature enacts a law with fall knowledge of all existing law on the same subject... and does not intend to abrogate or interfere with another law on the same matter unless the repugnancy between the two is irreconcilable.
Blythe v. Radiometer America, Inc. (1993), 262 Mont. 464, 475, 866 P.2d 218, 225. On the other hand, were we to read the statutes as the Estate asks and open all records of peer review committees, we would gut the peer review confidentiality provisions.
¶21 In Sistock, we further mistakenly relied in part upon a criminal procedure statute, § 46-15-332, MCA, in addressing the question of privilege. Because that criminal law statute does not apply to a civil case like Sistock, our reliance upon the statute was erroneous. We therefore specifically overrule the one-sentence reference to § 46-15-332, MCA, in Sistock, 251 Mont. at 41, 823 P.2d at 253.
¶22 We conclude that to the extent that documents over which the Hospital seeks protection are relevant to Huether’s hospital care and treatment, they are discoverable. However, to the extent the requested documents are “in connection with the professional training, supervision, or discipline of the medical staff of [the] hospital[],” they are not discoverable. We recognize that this may require that the court conduct an in-camera review and redact material in the documents relating to supervisory or disciplinary matters.
¶23 Given our decision, we conclude that we need not reach the issue of the constitutionality of the peer review statutes. We remand this case for farther proceedings consistent with this Opinion.
JUSTICES GRAY, LEAPHART and REGNIER concur.