No. 01-200

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 241

KIELY CONSTRUCTION, L.L.C.,

       Plaintiff/Respondent/Cross-Appellant,

       v.

CITY OF RED LODGE, acting through the RED LODGE
CITY COUNCIL and its past and present council members,
SMOKEY OWEN, HUGO GOLFI, AL SWANSON, PHILLIP
JAQUITH, BARBARA BECK, MARY FITZGERALD,
ANNE ROOD, GLORY MAHAN, RICHARD GESSLING,
PETE CRITELLI, and CRAIG BEAM,

       Defendants/Appellants/Cross-Respondents.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                    In and for the County of Carbon,
                    The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Michael B. Anderson, Christopher N. Rork, Anderson & Liechty, Billings,
              Montana; Gary Thomas, Red Lodge City Attorney, Red Lodge, Montana

       For Respondent:

              Bruce Fredrickson, Kristin Omvig, Crowley, Haughey, Hanson, Toole
      & Dietrich, Billings, Montana

                        Submitted on Briefs:  September 20, 2001
                                    Decided:  November 1, 2002

Filed:

_____
                         Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     This appeal arises from decisions by the Red Lodge City Council and rulings by the Twenty-Second Judicial District Court concerning an application for a subdivision, its conditioned approval, and ultimate denial, as well as from special and advisory jury verdicts. We affirm in part and reverse in part.

¶2     After receiving a preliminary plat application for a proposed subdivision from Kiely Construction (Kiely), the Carbon County Planning Board recommended approval of the proposed subdivision, subject to eighteen conditions, to the City of Red Lodge (Red Lodge). Red Lodge received the application in the Summer of 1996, but failed to act upon it within sixty days. Kiely obtained a Writ of Mandamus in August of 1997, compelling Red Lodge to act upon the application, and Red Lodge conditionally approved Kiely's application, subject to twenty-six conditions. On October 14, 1997, Kiely filed a complaint, alleging that Red Lodge failed to act within the mandatory sixty-day time frame, that imposition of some conditions were an abuse of discretion, and that its due process rights were violated.

¶3     Following mediation in the Fall of 1998, the parties negotiated a subdivision improvements agreement, which Red Lodge conditionally accepted, but Kiely then rejected. On March 20, 1999, the District Court entered partial summary judgment, ordering Red Lodge to review and "approve, conditionally approve or deny," Kiely's application within thirty days. Following a public hearing, Red Lodge City Council unanimously denied Kiely's application without written findings. Kiely then filed an amended complaint, alleging

2

constitutional violations and requesting damages and approval of its application. Prior to trial, the District Court entered partial summary judgment, dismissing Kiely's claims against the individually named defendants.

¶4 At trial, Kiely sought damages for the alleged arbitrary or capricious denial of its application. The jury's special verdict awarded Kiely $292,170.00 in damages for Red Lodge's arbitrary and capricious actions pursuant to state law, and also found for Kiely on its constitutional claims under 42 U.S.C. § 1983, but awarded damages in the sum of only $1.00. Kiely had also appealed to the District Court from Red Lodge's denial of its preliminary plat application. The District Court accepted the jury's advisory verdict on this issue, and concluded that Red Lodge acted arbitrarily, capriciously and unlawfully, and ordered Red Lodge to conditionally approve Kiely's preliminary plat application, subject to the original eighteen conditions. The District Court awarded Kiely $250,243.50 in attorney's fees pursuant to 42 U.S.C. § 1988, and also awarded costs. Red Lodge appeals several of the District Court's pre-trial, trial, and post-trial rulings, while Kiely cross-appeals two of the court's summary judgment rulings.

¶5 We restate the issues as follows:

1. Whether the District Court erred in submitting Kiely's 42 U.S.C. § 1983 claims to the jury;

2. Whether the District Court erred in awarding Kiely attorney's fees pursuant to 42 U.S.C. § 1988;

3. Whether the District Court abused its discretion when instructing the jury on Kiely's state law claims;

4. What relief Kiely is entitled to under its state law claims;

5. Whether the District Court erred in dismissing the individual defendants by order of summary judgment;

6. Whether the District Court abused its discretion regarding admission of evidence; and

7. Whether the District Court erred by not modifying the damage award.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 In the Spring of 1996, Kiely initiated the approval process for its proposed subdivision, referred to as Kiely Island at Rock Creek, and located within the City of Red Lodge, Carbon County, Montana. On May 16, 1996, Kiely submitted a preliminary subdivision plat application to the Carbon County Planning Board, because at the time, Red Lodge did not have a city planning board in place. Following a public hearing on June 18, 1996, the County Planning Board recommended approval of the proposed subdivision to the City of Red Lodge, subject to eighteen conditions. The recommendation was transmitted to the Red Lodge City Council (City Council) on July 2, 1996. Although § 76-3-604, MCA, requires the city to act upon such an application within sixty days, Red Lodge let the time pass without action. After the City of Red Lodge Planning Board was in place, it issued a staff report on July 15, 1997, wherein it recommended the City Council approve Kiely's preliminary plat application with the same eighteen conditions proposed by the County Planning Board.

¶7 On August 26, 1997, upon Kiely's request, the Thirteenth Judicial District Court[1]

---

[1]Although this case originated in the Thirteenth Judicial District, in early 2000, it was

4

issued a Writ of Mandamus, compelling Red Lodge to act upon Kiely's preliminary plat application within ten days by approving, conditionally approving, or denying the application. Following a public hearing on September 10, 1997, Kiely's application was conditionally approved, subject to twenty-six conditions. Apparently, Red Lodge reviewed Kiely's application under the City of Red Lodge Development Code (1997 Development Code), which was adopted in April of 1997, and effective May 22, 1997.

¶8      On October 14, 1997, Kiely commenced this action appealing the twenty-six final conditions adopted by Red Lodge on September 10, 1997. Kiely brought the action under §§ 76-3-625(1) and (2), MCA, and 42 U.S.C. § 1983 (§ 1983), maintaining that Red Lodge acted arbitrarily and capriciously in imposing the conditions. Kiely sought the following relief: (1) an order requiring Red Lodge to apply the regulations in effect at the time the application was submitted, and revise the "final conditions" to comply with such regulations; and (2) damages incurred as a result of the delay (caused by Red Lodge's violation of sixty-day requirement), and the final twenty-six conditions imposed, and also damages for Kiely's deprivation of property rights under § 1983. Red Lodge responded that the adoption of interim zoning ordinances on April 8, 1997, allowed it to prohibit any uses in conflict with the ordinances, and that the individual council members were entitled to qualified immunity.

transferred to the newly created Twenty-Second Judicial District. *See* 1999 Mont. Laws Ch. 454, Sec. 1 (Act creating the 22nd Judicial District).

¶9 In a motion for partial summary judgment filed on August 18, 1998, Kiely requested the District Court deem its preliminary plat application approved, subject to the original eighteen conditions recommended by the County Planning Board, because Red Lodge failed to act within the mandatory sixty days.

¶10 The parties commenced mediation in the Fall of 1998. Following negotiations on September 14, 1998, the parties entered into a subdivision improvements agreement (SIA), which Red Lodge conditionally accepted on January 12, 1999, by adding seven conditions that were not considered in the original agreement. Kiely rejected this conditional SIA, and pursued relief in the District Court, seeking either (a) a "deemed approval" of the County Planning Board's eighteen conditions, or (b) an order requiring the city to revise its twenty-six condition approval to comply with the 1995 Subdivision Regulations for Carbon County, City of Red Lodge, and Towns of Bridger, Joliet, Fromberg, and Bearcreek (1995 Subdivision Regulations).

¶11 On March 20, 1999, the District Court entered partial summary judgment, finding that as a matter of law, Red Lodge violated § 76-3-604, MCA, by failing to act on Kiely's application for plat approval within sixty days. The court declined to grant relief in the form of a "deemed approval" of Kiely's application, and instead ordered Red Lodge to review and "approve, conditionally approve or deny," the application within thirty days, adding that any conditions based on regulations other than the 1995 Subdivision Regulations in effect at the time of preliminary application, were unlawful and void.

6

¶12 Following a public hearing on April 15, 1999, the City Council unanimously denied Kiely's preliminary plat application. However, it failed to provide Kiely with either written findings as required by § 76-3-608(2), MCA, or a written statement as mandated by § 76-3-620, MCA. Kiely then filed an amended complaint, seeking reversal of Red Lodge's denial of its application and an order requiring Red Lodge to apply the subdivision regulations in effect at the time the application was submitted. Kiely also sought compensatory damages and attorney's fees pursuant to its original complaint.

¶13 In May of 2000, Red Lodge filed a motion for summary judgment, alleging the acts by Red Lodge and the City Council were legislative acts, thus qualifying Red Lodge and the City Council for statutory immunity under § 2-9-111, MCA. Red Lodge further asserted that it had not acted arbitrarily or capriciously. On June 13, 2000, Kiely filed a motion for partial summary judgment, seeking a finding that Red Lodge acted arbitrarily and capriciously in denying its applications and that the City Council's failure to enter a written statement at the April 15, 1999, meeting was arbitrary and capricious *per se*.

¶14 On July 3, 2000, the District Court entered an order, denying Kiely's motion for partial summary judgment and denying summary judgment as to Red Lodge. However, the court granted summary judgment as to the individually named members of the City Council, pursuant to § 2-9-305(5), MCA, concluding the individual council members were immune from suit.

¶15 Prior to trial, the court and the parties agreed that Kiely's appeal from Red Lodge's denial of its application, under § 76-3-625(2), MCA, was a non-jury issue, and therefore

7

submitted that issue to the jury sitting as an advisory jury. However, Kiely also sought damages for Red Lodge's arbitrary or capricious actions on its application under § 76-3-625(1), MCA, as well as damages under § 1983, and those issues were submitted to the jury for a special verdict. The jury trial commenced on July 17, 2000.

¶16 Following the trial, the jury found Red Lodge acted arbitrarily or capriciously and awarded Kiely $292,170.00 in damages pursuant to § 76-3-625(1), MCA. The jury also found for Kiely on its constitutional claims under § 1983 (finding substantive and procedural due process violations, but not equal protection violations), but awarded damages in the sum of only $1.00. In an advisory verdict, the jury found Red Lodge had acted arbitrarily or capriciously or unlawfully when it (a) failed to act on Kiely's application within sixty days; (b) conditionally approved the application subject to twenty-six conditions, a number of which were unlawful and void; (c) voted to approve the SIA, subject to seven additional conditions; and (d) denied Kiely's application on April 15, 1999, and failed to issue written findings explaining the denial.

¶17 Following the verdict, Kiely petitioned the court for attorney's fees and costs pursuant to 42 U.S.C. § 1988 (§ 1988). Kiely also continued to pursue its appeal to the District Court, under § 76-3-625(2), MCA, from the City Council's decision denying its application. Kiely sought an order approving the application as originally approved by the County Planning Board (i.e., subject to the eighteen conditions), or in the alternative, an order approving the application and January 1999 SIA.

¶18 On August 25, 2000, the District Court held a hearing to determine if Kiely was entitled to attorney's fees and whether Kiely was entitled to relief under § 76-3-625(2), MCA. On October 23, 2000, the District Court entered its Findings of Fact, Conclusions of Law, and Order. The court concluded that Red Lodge acted arbitrarily, capriciously and unlawfully when it failed to act on Kiely's application within sixty days, conditionally approved the application with conditions pursuant to the 1997 Development Code, rather than those in effect at the time of application (the 1995 Subdivision Regulations), and when it denied Kiely's preliminary plat application. The court ordered Red Lodge to vacate its April 15, 1999 denial of Kiely's application and conditionally approve the application, subject to the original eighteen conditions recommended by the County Planning Board. The District Court awarded $250,243.50 in attorney's fees to Kiely, pursuant to 42 U.S.C. § 1988, and also awarded $5,627.46 in costs pursuant to § 25-10-501, MCA.

¶19 Red Lodge appeals the jury instructions and special verdict form, several of the court's evidentiary rulings, the court's remedy requiring Red Lodge to approve the application subject to the eighteen conditions, the calculation of damages, and the attorney's fees award. Kiely cross-appeals the District Court's entry of two partial summary judgments, one of which allegedly eliminated conditional approval of Kiely's application, and the other which dismissed the individual City Council members.

## STANDARDS OF REVIEW

¶20 This Opinion addresses multiple and diverse issues, and therefore, each standard of review will be set forth immediately preceding discussion of the issue at hand.

9

## Issue 1

¶21 **Did the District Court err in submitting Kiely's § 1983 claims to the jury?**

¶22 Kiely brought claims against Red Lodge under §§ 76-3-625(1) and (2), MCA, and 42 U.S.C. § 1983. On appeal, Red Lodge challenges several jury instructions given by the District Court relative to Kiely's § 1983 claims and alleges prejudice from the instructions. Kiely counters that we should not consider challenges to the constitutional claims, arguing that Red Lodge first raised them in its reply brief where it asserted Kiely was not entitled to attorney's fees under 42 U.S.C. § 1988. However, the question of whether Kiely possessed a protected property interest was the underlying basis of Red Lodge's challenges to the jury instructions, and we therefore will reach the merits of Red Lodge's challenge of Kiely's § 1983 claims. Because it is dispositive of other issues on appeal, we will address the issue of Kiely's § 1983 claims first.

¶23 In order to state a viable § 1983 claim, the plaintiff must first establish it possesses a protected interest since the guarantees of the Fifth and Fourteenth Amendments "apply only when a constitutionally protected liberty interest or property interest is at stake." *Tellis v. Godinez* (9th Cir. 1993), 5 F.3d 1314, 1316 (citations omitted). Thus, "a threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.* (9th Cir. 1994), 24 F.3d 56, 62 (citing *Board of Regents v. Roth* (1972), 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556).

¶24 While the Due Process Clause provides protection for certain property or liberty interests, property interests themselves are not created by the Constitution; "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law." *Roth*, 408 U.S. at 577. *See also Parks v. Watson* (9th Cir. 1983), 716 F.2d 646, 656.

¶25 Whether one has a protected property interest is determined as a matter of law. *See Doran v. Houle* (9th Cir. 1983), 721 F.2d 1182, 1184 (citation omitted) ("Although the answer to the question of whether a property interest was present necessarily depends on the facts in this case, it remains a legal issue requiring an interpretation of the federal Constitution."). *See also, Gardner v. Baltimore Mayor & City Council* (4th Cir. 1992), 969 F.2d 63, 68 (In analyzing substantive due process claims, "[i]f there is no cognizable property interest, there is no need to reach the question of whether the purported deprivation was arbitrary or capricious."); and *RRI Realty Corp. v. Inc. Village of Southhampton* (2d Cir. 1989), 870 F.2d 911, 918, ***cert. denied,* 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989)** ("Since the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise, the question of whether an applicant has a property interest will normally be a matter of law for the court."). The threshold question of whether one has a protected property interest must therefore be answered in the affirmative before the question of whether one was deprived of that interest may be submitted to a jury. Thus, we must determine as a matter of law whether Kiely established a property interest sufficient to maintain its § 1983 claims.

11

¶26 Kiely claimed two sources for its "protected property interests," asserting that (a) a governing body may not unreasonably restrict Kiely's right to use its property, relying on § 76-3-608(5)(a), MCA; and (b) Kiely had a right to final approval of its plat, relying on § 76-3-611(1), MCA. Therefore, we must determine if either of these statutes confer a protected property interest sufficient to sustain a § 1983 claim. If the statutory scheme places a "significant substantive restriction" on the decision to grant a permit or license, it would be sufficient to create a protected property interest. *Wedges*, 24 F.3d at 62 (citing *Goodisman v. Lytle* (9th Cir. 1984), 724 F.2d 818, 820).

¶27 When a plaintiff looks to state law to provide a basis for a property interest, "[a] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Wedges*, 24 F.3d at 62 (citation omitted). *See also, Allen v. City of Beverly Hills* (9th Cir. 1990), 911 F.2d 367, 370 (expectation of entitlement, sufficient to create a property interest, depends "largely upon the extent to which the statute contains mandatory language that restricts the discretion of the decisionmaker") (citing *Jacobson v. Hannifin* (9th Cir. 1980), 627 F.2d 177, 180). "A statute will create an entitlement to a governmental benefit either if the statute sets out conditions under which the benefit *must* be granted or if the statute sets out the *only* conditions under which the benefit may be denied." *Allen*, 911 F.2d at 370 (emphasis in original) (citation omitted) (because of the broad discretion vested in the city to lay off the plaintiff "in the interests of the economy," plaintiff had no constitutionally protected property interest in his employment).

12

¶28 The Fourth Circuit has concluded that any significant discretion conferred upon a local agency defeats a claim of entitlement. *Gardner*, 969 F.2d at 68 (plaintiff had no legitimate claim of entitlement to issuance of a public works agreement when state and municipal law accorded the city discretion to refuse to issue the agreement). In *Gardner*, the court noted that "whether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval." *Gardner*, 969 F.2d at 68 (emphasis in original) (citations omitted). The court further explained that "[u]nder this standard, a cognizable property interest exists 'only when the discretion of the issuing agency is so narrowly circumscribed that approval of a property application is virtually assured.' " *Gardner*, 969 F.2d at 68 (citing *RRI Realty*, 870 F.2d at 918).

¶29 **"When analyzing whether a plaintiff presents a legitimate claim of entitlement, we focus on the degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome."** *Jacobs, Visconsi & Jacobs v. City of Lawrence* **(10th Cir. 1991), 927 F.2d 1111, 1116 (citation omitted). If applicants for rezoning cannot establish that "there is a set of conditions the fulfillment of which would give rise to a legitimate expectation" of approval of their request, "the city's decision making lacks sufficient substantive limitations to invoke due process guarantees."** *Jacobs***, 927 F.2d at 1116 (citing** *Walker v. City of Kansas City, Mo.* **(8th Cir. 1990), 911 F.2d 80, 94;** *Spence v. Zimmerman* **(11th Cir. 1989), 873 F.2d 256, 258;** *Yale Auto Parts, Inc. v. Johnson* **(2d Cir. 1985), 758 F.2d 54; and** *RRI Realty,* **870 F.2d 911).** *See also, Baumann*

*v. Arizona Dept. of Corrections* (9th Cir. 1985), 754 F.2d 841, 844-45 (in adopting the "shall/unless" standard for identifying protected interests, the Court of Appeals concluded a liberty interest in parole was not created when the statute relied upon by the plaintiff was basic and general and did not include substantive criteria specifically limiting the discretion of officials).

¶30 Applying these principles, we must determine what, if any, property interest Kiely might have possessed to sustain its § 1983 claims. The two statutes Kiely relied on for this right were §§ 76-3-608(5)(a) and 76-3-611(1), MCA.

¶31 **Does § 76-3-608(5), MCA, establish a constitutionally protected property interest (i.e., a legitimate claim of entitlement)?**

¶32 Section 76-3-608, MCA, sets forth the criteria for local government review of preliminary plat applications and reads in relevant part:

> (1) The basis for the governing body's decision to approve, conditionally approve, or disapprove a subdivision is whether the preliminary plat, applicable environmental assessment, public hearing, planning board recommendations, or additional information *demonstrates that development of the subdivision meets the requirements of this chapter.* . . .
> (2) The governing body shall issue written findings of fact that weigh the criteria in subsection (3), as applicable.
> . . . .
> (4) The governing body *may require* the subdivider to design the subdivision to reasonably minimize potentially significant adverse impacts identified through the review required under subsection (3). The governing body shall issue written findings to justify the reasonable mitigation required under this subsection (4).
> (5) (a) In reviewing a subdivision under subsection (3) and when requiring mitigation under subsection (4), *a governing body may not unreasonably restrict a landowner's ability to develop land, but it is recognized that in some instances the unmitigated impacts of a proposed development may be unacceptable and will preclude approval of the plat.*

14

. . . [Emphasis added.]

¶33        Subsection (5)(a), upon which Kiely relied for its vested property right, directs the government to not act "unreasonably." Such a broad and subjective standard implicitly vests a substantial level of discretion in the governing body. *See Jacobson v. Hannifin* (9th Cir. 1980), 627 F.2d 177, 180 (When "[t]he only substantive restriction imposed upon the [Gaming] Commission's exercise of authority [to deny licenses] is the requirement that the basis for its decision be reasonable," such wide discretion "negates the claim to a protectible property interest created by the State."). Moreover, § 76-3-608(1), MCA, explicitly vests a considerable amount of discretion in the governing body, since the governing body makes its decision under the broad guidance of whether "the subdivision meets the requirements of this chapter." In subsection (4), the governing body has the discretion to require the subdivider to design the subdivision to minimize identified impacts.

¶34    No provision of § 76-3-608, MCA, either confers or infers a "right to enjoy," or "right to use," property in a particular manner, as Kiely argued. The statute imposes restrictions upon a landowner's ability to develop land; it does not establish a right to develop land. We therefore conclude § 76-3-608, MCA, does not establish a legitimate claim of entitlement to support Kiely's § 1983 claims.

¶35    **Does Montana's Subdivision and Platting Act, specifically §§ 76-3-610 and 76-3-611, MCA, establish a constitutionally protected property interest?**

¶36    The remaining statutory provisions relied on by Kiely for its claimed protected property interest provide:

15

**76-3-610.  Effect of approval of preliminary plat**
(1) Upon approving or conditionally approving a preliminary plat, the governing body shall provide the subdivider with a dated and signed statement of approval. This approval shall be in force for not more than 3 calendar years or less than 1 calendar year. At the end of this period the governing body may, at the request of the subdivider, extend its approval for no more than 1 calendar year, except that the governing body may extend its approval for a period of more than 1 year if that approval period is included as a specific condition of a written agreement between the governing body and the subdivider, according to 76-3-507.

(2) After the preliminary plat is approved, the governing body and its subdivisions *may not impose any additional conditions as a prerequisite to final plat approval providing said approval is obtained within the original or extended approval period as provided in subsection (1).*[2] [Emphasis added.]

**76-3-611.  Review of final plat**
(1) The governing body shall examine each final subdivision plat and *shall approve* the plat *only if*:
      (a) it conforms to the conditions of approval set forth on the preliminary plat and to the terms of this chapter and regulations adopted pursuant to this chapter; and
      (b) the county treasurer has certified that all real property taxes and special assessments assessed and levied on the land to be subdivided have been paid.
. . . . [Emphasis added.]

¶37      Red Lodge had the discretionary power to reject/accept the recommendations of the County Planning Board, as the jurisdiction for ultimate approval of the proposed subdivision rested with Red Lodge.  "When the proposed subdivision lies within the boundaries of an incorporated city or town, the preliminary plat must be submitted to and approved by the city or town governing body."  Section 76-3-601(2)(a), MCA.  Kiely's

_____
[2]This identical provision also appears in the 1995 Subdivision Regulations. *See* § II-B-5, Preliminary Plat Approval Period.

proposed subdivision was located within the city limits of Red Lodge, thus Red Lodge is the "governing body" contemplated in §§ 76-3-610 and -611, MCA. We must now examine the level of discretion reposed in the governing body concerning plat applications. If we conclude there is a lack of significant substantive restrictions on Red Lodge's powers to reject a plat, then we must conclude Kiely did not have a legitimate claim of entitlement.

¶38 Significantly, although Kiely argues it is entitled to final plat approval, Kiely never submitted a final plat for approval. Kiely received a conditioned approval on September 10, 1997 (with twenty-six conditions), and then following the court's order on summary judgment, Kiely's preliminary plat application was denied entirely on April 15, 1999. At no time did Red Lodge consider a final plat application from Kiely.

¶39 The county/city local subdivision regulations require that to obtain final approval, a final plat must be submitted to the subdivision administrator before the expiration of the preliminary plat approval period. *See* 1995 Subdivision Regulations, § II-C-1, Final Plat Submittal. Moreover, § 76-3-611(1)(a), MCA, requires the governing body approve "the [final] plat only if it conforms to the conditions of approval set forth on the preliminary plat . . . ." In the instant case, there is no final plat available for review to determine if it conforms to the preliminary plat approval. However, Kiely maintains it had a protected property interest <u>once it acquired conditioned approval</u>, claiming it was entitled to final plat approval if it could meet all the requirements.

¶40 Under § 76-3-610, MCA, Red Lodge could not impose any new conditions as a prerequisite to final plat approval as long as the final approval was obtained within the

17

approval period. Thus, according to § 76-3-610, MCA, it appears there were substantive restrictions on Red Lodge's powers to reject the final plat, as long as the final approval was obtained within the stated time frame. However, § 76-3-610, MCA, must be read in conjunction with § 76-3-611, MCA, since final plat approval is guided by the latter section.

¶41    According to § 76-3-611(1), MCA,

> The governing body shall examine each final subdivision plat and *shall* approve the plat *only if*: (a) it conforms to the conditions of approval set forth on the preliminary plat and to the terms of this chapter and regulations adopted pursuant to this chapter; and (b) the county treasurer has certified that all real property taxes . . . have been paid." [Emphasis added.]

Although § 76-3-611, MCA, limits the discretionary power of the governing body ("a preliminarily approved plat *shall* be approved"), subsection (1) still requires the conditions of approval set forth on the preliminary plat be satisfied <u>before</u> the governing body is required to grant final approval.

¶42    In the situation here, Kiely did not fulfill all the conditions of preliminary approval. Kiely admits in its opening brief that: "Kiely was prepared to meet a majority of conditions," and then asserts: "[u]pon meeting the valid conditions, Kiely had a vested right to final plat approval," citing §§ 76-3-610, and -611, MCA. Moreover, during William Kiely's (William's) testimony, he was asked, "How close at that time [Spring of 1999] were you to applying for final platitude [sic]?" William responded, "At that time it was just a matter of cleaning up a few loose ends and we were ready to go." Later William was asked to go through each of the twenty-six conditions and explain any problems he had with them and why. During this portion of his testimony, William commented on the provisions, noting he

18

had "no problem" with some, while others were "impossible" for him to meet. Although § 76-3-611, MCA, appears to leave little or no discretion to the city to deny final plat approval to the applicant who has met all conditions set by the governing body, Kiely had not yet met those conditions, and therefore, Red Lodge retained the discretion to deny Kiely's final approval pursuant to § 76-3-611(1)(a), MCA. *See Parks*, 716 F.2d at 657 ("The Oregon statute mandates that if the three matters are determined in favor of the petition the governing body *shall* vacate the streets. Once the conditions are met the city lacks discretionary powers.") (underline emphasis added).

¶43 Kiely relies on *Bateson v. Geisse* (9th Cir. 1988), 857 F.2d 1300, in asserting it possessed a property interest. In *Bateson*, the Court of Appeals concluded Bateson's substantive due process rights were violated when the city failed to issue him a building permit. In its holding, the court did not explicitly hold Bateson had a protected property interest in his building permit, but did rely on the city's regulations that required issuance of a permit once an applicant's building plans complied with the code and the fees were paid. The court noted that Bateson had met all the necessary requirements for the city to issue him a building permit, and that the city regulations did not include a provision which allowed the city council to review an application before the permit was issued.

¶44 Kiely's reliance on *Bateson* is misplaced. There, the plaintiff had met all the requirements necessary for the city to issue him a building permit, whereas in the instant case, Kiely had not met the conditions for final approval (i.e., had yet to apply for final approval and had not met all the conditions from the preliminary plat approval in September

19

of 1997). Furthermore, the regulations at issue in *Bateson* did not allow the city to review a building permit issuance, whereas here, the City Council was specifically required to review and approve preliminary and final plat applications.

¶45 Thus, we conclude Kiely did not have a protected property interest at the preliminary approval stage of his plat application process. Arguably, Kiely could have established a property interest upon application for final approval, if it either met all twenty-six conditions or, once it was established which of the twenty-six conditions were based on the 1997 Development Code, that it had met those remaining lawful conditions, and paid the necessary taxes.

¶46 The problem is that the record before us does not clearly establish which of the twenty-six conditions Kiely complied with and which it did not. Nor does the record even establish compliance with the original eighteen conditions. Although in briefs to the District Court on pre-trial motions, Kiely questioned the legality of some of the twenty-six conditions, the record before us does not clearly demonstrate which conditions were "unlawful," or impossible to satisfy according to Kiely. Significantly, the question of which of the twenty-six conditions were unlawful was never decided by the District Court.

¶47 For Kiely to establish a legitimate entitlement to, or protected property interest in, final approval of its preliminary application, it would have had to either demonstrate it complied with all the conditions imposed upon its preliminary plat, or at a minimum, that it had met all the "lawful" conditions. However, Kiely never reached this point in the application process, and therefore could not present evidence demonstrating the level of

20

compliance required to establish a protected property interest in his plat application. In the absence of a demonstrated protected property interest, Kiely's § 1983 claims cannot stand. Accordingly, we conclude the District Court erred in submitting Kiely's § 1983 claims to the jury, and we vacate that portion of the jury's special verdict and decision of the court which premised Red Lodge's liability on 42 U.S.C. § 1983.

**Issue 2**

¶48 **In light of our dismissal of its § 1983 claims for lack of a protected property interest, is Kiely entitled to attorney's fees pursuant to 42 U.S.C. § 1988?**

¶49 **Pursuant to 42 U.S.C. § 1988(b):**

> **In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.**

¶50 Although the power to award attorney's fees under § 1988 is discretionary, a prevailing plaintiff in a § 1983 claim should ordinarily recover an attorney's fee "unless special circumstances would render such an award unjust." *Laudert v. Richland County Sheriff's Dept.*, 2000 MT 218, ¶ 49, 301 Mont. 114, ¶ 49, 7 P.3d 386, ¶ 49 (citing *Hensley v. Eckerhart* (1983), 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40, 48). However, before attorney's fees can be granted, a court must determine whether the plaintiff prevailed. *Laudert*, ¶ 49 (citing *Hensley*, 461 U.S. at 434). Although Kiely was the prevailing party as to its claims under state law, we have determined that its § 1983 verdict cannot stand.

21

¶51 In a case where the plaintiff prevailed on his state law claims (assault, battery, and negligence) against arresting officers who allegedly used unnecessary force, but had his § 1983 claim dismissed on a directed verdict, the Ninth Circuit Court of Appeals held that the plaintiff was not a "prevailing party" entitled to attorney's fees under § 1988. *Mateyko v. Felix* (9th Cir. 1990), 924 F.2d 824, *cert. denied*, 502 U.S. 814, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). *See also City of Seattle v. McCready* (Wash. 1997), 931 P.2d 156, 160 ("Because we have considered and rejected Appellants' argument that the inspection warrants violated the Fourth Amendment, Appellants are not entitled to attorney fees under § 1988's pendent claim theory."); and *Kelly v. City of Leesville* (5th Cir. 1990), 897 F.2d 172, 177 (when the jury expressly found against plaintiff on his constitutional claim, he is not entitled to fees under § 1988, "since 42 U.S.C. § 1988, 'does not authorize an award of fees to a party who recovers on a pendent state claim but loses on his civil rights claim.' ") (citing *McDonald v. Doe* (5th Cir. 1984), 748 F.2d 1055, 1056).

¶52 In response to the assertion that the "*de minimis*" $1.00 award on its § 1983 claims did not support an award of attorney's fees, Kiely argues that recovery on a state law claim justifies attorney's fees, claiming that the Ninth Circuit's decision in *Morales* controls because in that case the plaintiff recovered attorney's fees even though his § 1983 claims had been dismissed following an appeal. *Morales v. City of San Rafael* (1996), 96 F.3d 359, *as amended on denial of rehearing*, 108 F.3d 981 (1997). We disagree. In *Morales*, the plaintiff brought a § 1983 claim for unlawful arrest against both the City of San Rafael and the arresting officer. Although the opinion is difficult to decipher, it appears that the

22

plaintiff's § 1983 claim was dismissed as to the city, but that he prevailed as against the officer. Therefore, in *Morales*, unlike here, a basis for an attorney's fees award under § 1988 remained.

¶53  Because we have vacated Kiely's § 1983 verdict, Kiely is not entitled to attorney's fees pursuant to § 1988. Accordingly, the District Court's award of $ 250,243.50 in attorney's fees is vacated.

## Issue 3

¶54  **Did the District Court abuse its discretion when instructing the jury on Kiely's state law claims?**

¶55  Red Lodge challenges the trial court's special verdict form and several of the jury instructions. Although a portion of the special verdict form and some of the jury instructions questioned by Red Lodge involve Kiely's § 1983 claims, we will address only those dealing with Kiely's state law claims, as the § 1983 portion of the verdict has been vacated.

¶56  Red Lodge contends that the special verdict form essentially directed the jury to find for Kiely in this case, arguing that the interrogatories were unduly confusing and presented the issues of fact in a biased manner.

¶57  The use of a special verdict form is left to the discretion of the trial court. Rule 49(a), M.R.Civ.P. A district court's decision to use a special verdict form is reviewed for an abuse of discretion. *Barthule v. Karman* (1994), 268 Mont. 477, 488, 886 P.2d 971, 978. *See also Baldauf v. Arrow Tank and Engineering,* 1999 MT 81, ¶ 49, 294 Mont. 107, ¶ 49, 979 P.2d 166, ¶ 49. Although it is "within the trial court's discretion to structure the form and frame

23

the questions of a special verdict, the interrogatories must be adequate to enable the jury to determine the factual issues essential to judgment." *Baldauf*, ¶ 49 (citation omitted). We use a three-part standard to determine the adequacy of a special verdict form:

> (1) whether, when read as a whole and in conjunction with the general charge, the interrogatories adequately presented the contested issues to the jury;
> (2) whether the submission of the issues to the jury was fair; and
> (3) whether the ultimate questions of fact were clearly submitted to the jury.

*Baldauf*, ¶ 49 (citation omitted).

¶58 With respect to Kiely's state law claims, the special verdict form instructed the jury to check either "yes" or "no" to the following interrogatories:

> 1. Did the City of Red Lodge, acting through the Red Lodge City Council (the "City"), act arbitrarily or capriciously when it did not, within the required 60 day period, approve, approve with conditions or deny the Application for Preliminary Plat Approval for the "Island at Rock Creek" Subdivision (the "Application") that was filed with the Carbon County Planning Board ("Planning Board") on May 28, 1996, by Kiely Construction, L.L.C. and which was forwarded by the Planning Board to the City on July 2, 1996, with a recommendation by the Planning Board to approve the Application subject to 18 conditions?

> 2. Did the City act arbitrarily or capriciously when, on September 10, 1997, using the wrong regulations, it approved the Application subject to 26 conditions, a number of which were unlawful and void?

> 3. Did the City act arbitrarily or capriciously when, on January 12, 1999, it unanimously voted to approve a Subdivision Improvements Agreement subject to seven additional conditions?

> 4. Did the City act arbitrarily or capriciously when, on April 15, 1999, it unanimously voted to deny the Application and failed to issue written findings explaining the denial?

¶59 We conclude that Kiely's state law claims were adequately presented to the jury. Kiely alleged four distinct instances in which Red Lodge's final action or decision (or delay in making a decision) was "arbitrary or capricious." In order to recover upon its state law claims under § 76-3-625(1), MCA, Kiely had to establish that the actions of Red Lodge were "arbitrary or capricious." Given that this was the level of misconduct required for there to be a finding of liability, it was appropriate for the court to ask the jury whether Red Lodge's conduct in those alleged instances met the "arbitrary or capricious" threshold, much as would the trial court, in a negligence action, frame its question in terms of "negligence."

¶60 The interrogatories incorporated facts gleaned from prior District Court rulings and unrefuted evidence presented at the trial. We conclude that the special verdict form presented the issues fairly and also submitted the ultimate questions of fact clearly. Accordingly, we conclude the special verdict form was not confusing, nor did it present the plaintiff's theories in a biased manner. We therefore hold the District Court did not abuse its discretion in using this form.

¶61 Red Lodge also claims the District Court abused its discretion when it gave certain instructions to the jury, arguing that several of the instructions pertaining to Kiely's state law claims were either duplicative or unduly emphasized Kiely's theories in the case.

¶62 A district court has discretion regarding the instructions it gives or refuses to give to a jury and we will not reverse a district court on the basis of its instructions absent an abuse of discretion. *McAlpine v. Rhone Poulenc Ag. Co.*, 2000 MT 383, ¶ 16, 304 Mont. 31, ¶ 16, 16 P.3d 1054, ¶ 16 (citing *Federated Mut. Ins. Co. v. Anderson*, 1999 MT 288, ¶ 44, 297 Mont.

25

33, ¶ 44, 991 P.2d 915, ¶ 44). In reviewing whether a particular jury instruction was properly given or refused, we consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial. *McAlpine*, ¶ 16. The party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. *McAlpine*, ¶ 16. *See also Barnes v. City of Thompson Falls*, 1999 MT 77, ¶ 8, 294 Mont. 76, ¶ 8, 979 P.2d 1275, ¶ 8 (a trial court is imbued with broad discretion to determine whether or not it will give a proposed instruction to the jury).

¶63 After considering the instructions in their entirety and in connection with the evidence introduced at trial, we conclude that Red Lodge failed to demonstrate it was prejudiced by the jury instructions, or that any of the instructions were duplicative. Rather, the trial court's jury instructions on Kiely's state law claims properly stated the applicable law of the case. We therefore conclude the District Court did not abuse its discretion in instructing the jury.

## Issue 4

¶64 **What relief is Kiely entitled to under its state law claims?**

¶65 In addition to its § 1983 claims, Kiely sought statutory relief against Red Lodge pursuant to §§ 76-3-625(1) and (2), MCA. Subsection (1) of 76-3-625, MCA, allows a plaintiff to sue for actual damages caused by a governing body's decision on a plat application if that decision was arbitrary or capricious. In its special verdict, the jury concluded that Red Lodge acted arbitrarily or capriciously when it: (1) failed to review Kiely's application within sixty days; (2) applied the wrong regulations when it conditionally

26

approved Kiely's application on September 10, 1997, subject to twenty-six conditions--some of which were unlawful and void; (3) approved the SIA subject to seven additional conditions; and (4) denied Kiely's application and failed to issue written findings explaining the denial. The jury awarded Kiely $292,170.00 in damages. Inasmuch as a constitutionally protected property interest is not a pre-requisite to a finding of liability under § 76-3-625(1), MCA, we need not conduct a constitutional analysis of this aspect of the court's judgment.

¶66     In addition to its action for damages pursuant to § 76-3-625(1), MCA, Kiely also appealed Red Lodge's April 15, 1999 denial of its preliminary plat application, pursuant to § 76-3-625(2), MCA. This subsection allows a party to appeal to the district court if it is aggrieved by a governing body's approval, conditional approval, or disapproval of a proposed preliminary plat or final subdivision plat. However, subsection (2) does not specify when the district court may grant relief nor what relief it may grant.

¶67     Following the trial, and after considering the jury's advisory verdict, the District Court entered its Findings of Fact, Conclusions of Law and Order, pursuant to subsection (2) of 76-3-625, MCA. The court concluded that Red Lodge acted arbitrarily, capriciously and unlawfully when it: failed to act within the mandatory sixty-day requirement of § 76-3-604, MCA; conditionally approved the application with conditions pursuant to the 1997 Development Code rather than the 1995 Subdivision Regulations in effect at the time the application was submitted; and rejected the application without findings. The court ordered Red Lodge to vacate its April 15, 1999 denial and to conditionally approve the preliminary

27

plat application subject to the eighteen conditions originally recommended by the County Planning Board.

¶68 Red Lodge contends this order was an unconstitutional violation of the doctrine of separation of powers, arguing that under the Montana Subdivision and Platting Act, the governing body (city, town, county) had "the sole discretion to approve, conditionally approve or deny a proposed application." Kiely counters that the Act does not limit the District Court's statutory powers on appeal, and that the court properly determined that Red Lodge acted arbitrarily, capriciously, and unlawfully. Also related to this issue is Kiely's contention on cross-appeal that the District Court's partial summary judgment on March 20, 1999, effectively abrogated the prior conditional approval of Kiely's preliminary plat.

¶69 When we review a district court's conclusions of law, our standard of review is plenary and we must determine whether the court's conclusions are correct as a matter of law. *Hampton v. Lewis and Clark County,* 2001 MT 81, ¶ 19, 305 Mont. 103, ¶ 19, 23 P.3d 908, ¶ 19 (citing *Lane v. Farmers Union Ins.*, 1999 MT 252, ¶ 15, 296 Mont. 267, ¶ 15, 989 P.2d 309, ¶ 15). The standard of review of a district court's ruling on § 76-3-625(2), MCA, is the same standard of review we apply to decisions of administrative agencies: "the standard of review to be applied by the trial court and this Court is whether the record establishes that the agency [i.e., governing body] acted arbitrarily, capriciously, or unlawfully." *Madison River R.V. Ltd. v. Town of Ennis,* 2000 MT 15, ¶ 30, 298 Mont. 91, ¶ 30, 994 P.2d 1098, ¶ 30 (citing *North Fork Pres. v. Dept. of State Lands* (1989), 238 Mont. 451, 458-59, 778 P.2d 862, 867). When a district court or this Court reviews an action under the "arbitrary and

28

capricious" standard, a reversal of the appealed ruling is not permitted "merely because the record contains inconsistent evidence or evidence which might support a different result. Rather, the decision being challenged must appear to be random, unreasonable, or seemingly unmotivated, based on the existing record." *Silva v. City of Columbia Falls* (1993), 258 Mont. 329, 335, 852 P.2d 671, 675.

¶70 First, we cannot conclude that the District Court's determination that Red Lodge acted arbitrarily, capriciously, and unlawfully in denying Kiely's preliminary plat application on April 15, 1999, was in error. In its Memorandum, the District Court noted that its "conscience was shocked by the City Council's disregard for the laws of our state." We conclude the District Court's Findings of Fact and Conclusions of Law were based on substantial and credible evidence, as well as the advisory verdict from the jury, and therefore conclude the court did not err in determining Red Lodge acted arbitrarily, capriciously, and unlawfully.

¶71 Section 76-3-625(2), MCA, is silent as to what relief a district court may enter for an aggrieved party. Under this statute,

> [a] party . . . who is aggrieved by a decision of the governing body to approve, conditionally approve, or disapprove a proposed preliminary plat or final subdivision plat may, within 30 days after the decision, appeal to the district court in the county in which the property involved is located. The petition must specify the grounds upon which the appeal is made.

Section 76-3-625(2), MCA.

¶72 The legislative history behind § 76-3-625, MCA, is devoid of helpful insight into the scope of relief intended under the statute, other than a passing indication that the provision

29

"overturned" the holding in *City of Kalispell v. Flathead County* (1993), 260 Mont. 258, 859 P.2d 458 (because there was no mechanism for judicial review of a conditioned approval of a preliminary subdivision plat in the Subdivision and Platting Act, the County Commissioner's decision was not appealable). We had stated, "the legislature did not provide an appeal process under this Act for cases involving decisions of conditional approval of preliminary plats; accordingly, this Court, will not fabricate one." *Kalispell*, 260 Mont. at 261, 859 P.2d at 460 (citing *Sourdough v. Board of County Com'rs* (1992), 253 Mont. 325, 327, 833 P.2d 207, 208). Although by enacting § 76-3-625(2), MCA, the Legislature provided an option for appealing a governing body's decision concerning subdivision applications, it failed to provide any guidance concerning the appropriate scope of review or the parameters of the district court's authority on appeal.

¶73 However, a statutory right of appeal "is not rendered nugatory because the statute does not specifically prescribe rules to guide the district court in trying such an appeal." *Heldenbrand v. Montana St. Bd. of Reg. for P.E. & L.S.* (1966), 147 Mont. 271, 278, 411 P.2d 744, 748 (the function of the district court, as provided by a statutory right of appeal of the board of registration decisions, was to "assure that administrative officials do not overstep the guidelines of their authority set down by the legislature," and as such right to appeal existed, the district court did not err when it denied plaintiff's writ of mandate). In *Heldenbrand*, the statute at issue allowed a person, aggrieved by any action of the board of registration, to appeal to the district court, and after a hearing, "said court shall make such decree sustaining or reversing the action of the board as . . . may seem just and proper."

*Heldenbrand*, 147 Mont. at 276, 411 P.2d at 474 (citing § 66-2345, RCM 1947 (repealed 1975)). This Court recognized that although a trial of such a case in the district court may be "awkward, difficult, and unsatisfactory," the "learned district judge would be able to devise ways and means not incompatible with the Code for disposing of the case." *Heldenbrand*, 147 Mont. at 279, 411 P.2d at 749.

¶74 Although *Heldenbrand* dealt with an appeal of an administrative agency decision, in light of our holding in *Madison River*, where we applied the same standard of review (arbitrary, capricious, or unlawful) to legislative decisions as to those of administrative agencies, we conclude the rationale behind the analysis for fashioning the proper scope of judicial review in *Heldenbrand* likewise applies in the instant case. As we noted in *Heldenbrand*,

> [t]he relief to be granted, or the disposition to be made of the appeal, must depend on the facts and circumstances of each case as it comes before the district judge. Corrective machinery, by its nature, must be given flexible limits, within of course the constitutional and statutory framework, that adequate and proper dispositions of each case may result.

*Heldenbrand*, 147 Mont. at 279, 411 P.2d at 749.

¶75 We conclude § 76-3-625(2), MCA, vests a district court with the discretion to determine what relief is appropriate based on the facts and circumstances of each appeal. As we have noted, § 76-3-625(2), MCA, provides no limits on the district court's authority or scope of review, and we decline to fashion such limits out of thin air. As we consistently have held, the Court's role in statutory construction "is to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what

31

has been inserted." *Huether v. District Court*, 2000 MT 158, ¶ 13, 300 Mont. 212, ¶ 13, 4 P.3d 1193, ¶ 13 (citing § 1-2-101, MCA). We conclude the plain language of § 76-3-625(2), MCA, grants the district court the authority to fashion an appropriate remedy for an aggrieved party.

¶76    We conclude the District Court's remedy in this case--ordering conditional approval of Kiely's preliminary plat application subject to the original eighteen conditions recommended by the County Planning Board--was a proper remedy, and an appropriate response to the unique factual situation with which the court was presented. In fashioning this remedy, the court noted that "the evidence was clear that [Kiely] was entitled to the approval," and recognized that, "[i]n view of the City Council's disregard of the laws of our state in acting upon [Kiely's] [preliminary plat] application, there is no reason to expect that it would follow those laws if the court were to . . . remand the matter back to the City Council." We cannot fault the District Court's logic.

¶77    Accordingly, we affirm the District Court's ruling which ordered Red Lodge to (a) vacate its April 15, 1999 denial of Kiely's preliminary plat application, and (b) conditionally approve the preliminary plat application subject to the original eighteen conditions for a period of three years. However, we modify the court's ruling only to the extent that Kiely's preliminary approval shall be in force for three years from the date of this Court's decision, rather than three years from the date the District Court's order was entered. This conclusion also resolves Kiely's contention on cross-appeal, that the District Court's partial summary judgment effectively abrogated the prior conditional approval of Kiely's preliminary plat,

32

because Kiely has been granted the conditional approval it sought in its motion for partial summary judgment.

## Issue 5

¶78 **Did the District Court err in dismissing the individual defendants by order of summary judgment on the basis of § 2-9-305(5), MCA?**

¶79 We review appeals from summary judgment rulings *de novo. Sleath v. West Mont Home Health Services*, 2000 MT 381, ¶ 19, 304 Mont. 1, ¶ 19, 16 P.3d 1042, ¶ 19 (citation omitted). When we review a district court's grant of summary judgment, we apply the same evaluation as the district court applies, based on Rule 56, M.R.Civ.P. *Sleath*, ¶ 19 (citation omitted). Finally, we review a district court's interpretation of law to determine if it is correct. *Steinback v. Bankers Life and Cas. Co.*, 2000 MT 316, ¶ 11, 302 Mont. 483, ¶ 11, 15 P.3d 872, ¶ 11 (citation omitted).

¶80 Kiely argues on cross-appeal that immunity does not attach to the individual defendants (i.e., Red Lodge City Council members) under § 2-9-305(5), MCA, because the council members cannot immunize themselves without creating a conflict of interest. Kiely also asserts the City Council's actions were administrative, rather than legislative, and that therefore neither Red Lodge nor the individuals may claim immunity under § 2-9-111, MCA. Red Lodge counters that the council members were acting within the scope of their employment and that their actions were legislative, and that therefore the immunity provisions of § 2-9-111, MCA, apply. Red Lodge also cites to *W.D. Const. Inc. v. Bd. of County Com'rs* (1985), 218 Mont. 348, 351-52, 707 P.2d 1111, 1113, for the proposition that

33

the act of approving a plat application is a legislative act, which entitles the council members to immunity.

¶81    In its July 3, 2000 Memorandum and Order, the District Court declined to determine, under § 2-9-111(2), MCA, whether the acts the City Council by its council members were either "administrative" or "legislative." In the opinion of the court, §§ 2-9-111(2), MCA, and 76-3-625(1), MCA, were not in conflict. Rather, the court considered "the remedy afforded by Section 76-3-625(1), MCA, to be specific to cases involving the appropriate application of the provisions of the Montana Subdivision and Platting Act." The court granted the individual council members immunity under § 2-9-305(5), MCA, noting that the "stated position of the City of Red Lodge that the city council members acted in their official capacities as representatives of the Red Lodge City Council is tacit acknowledgment as contemplated by § 2-9-305(5), MCA."

¶82    First, we reject Red Lodge's argument that the actions by the City Council were legislative and therefore subject to immunity protection. We conclude the council's acts were administrative, and not legislative, and therefore afford neither Red Lodge nor the council members immunity under § 2-9-111, MCA.

¶83    Although we held in *W.D. Construction* that the members of a Board of County Commissioners were immune from suit for damages arising from allegations that they failed to require compliance with subdivision regulations prior to a final plat approval, Red Lodge's reliance on *W.D. Construction* is misplaced, because that case was decided prior to the amendments to § 2-9-111, MCA. As we recognized in *Dagel v. City of Great Falls* (1991),

34

250 Mont. 224, 233, 819 P.2d 186, 191, "Section 2-9-111, MCA (1991), significantly changed the statute and therefore modified the theories expressed in the various immunity cases . . . ." Moreover, we recognized that the amendments "make clear that a governmental entity is no longer immune for *all* its actions," only those actions considered to be legislative. *Knight v. City of Missoula* (1992), 252 Mont. 232, 245, 827 P.2d 1270, 1278 (emphasis in original). In *Dagel*, we recited the purpose of the act amending § 2-9-111, MCA, which the Legislature described as:

> AN ACT CLARIFYING THAT STATUTORY LEGISLATIVE IMMUNITY EXTENDS ONLY TO LEGISLATIVE BODIES OF GOVERNMENTAL ENTITIES AND ONLY TO LEGISLATIVE ACTIONS TAKEN BY THOSE BODIES; CLARIFYING THAT GOVERNMENTAL ENTITIES ARE NOT IMMUNE UNDER THE LEGISLATIVE IMMUNITY STATUTE FOR NONLEGISLATIVE ACTIONS . . . .

*Dagel*, 250 Mont. at 231-32, 819 P.2d at 191 (emphasis added).

¶84 A legislative act is an action by a legislative body which results in creation of law or declaration of public policy. Section 2-9-111(1)(c)(i)(A), MCA. By contrast, an administrative act is one taken in the execution of a law or public policy. Section 2-9-111(c)(ii), MCA. *See Knight*, 252 Mont. at 246, 827 P.2d at 1278 (a city's duties in connection with maintaining its streets is an administrative function); and *Dagel*, 250 Mont. at 233, 819 P.2d at 191 (in an action for constructive discharge, alleged harassment by a supervisor does not constitute a legislative act).

¶85 Although approving or denying plat applications are official duties of the City Council, such actions do not "result in the creation of law or declaration of public policy,"

but rather are the execution of the policies as set forth in the Montana Subdivision and Platting Act. We conclude the actions by Red Lodge and its City Council, which gave rise to this action, were administrative acts, and accordingly conclude neither the governmental entity nor any member acting for the entity are immune from suit for the actions alleged in Kiely's complaint. However, this conclusion is not dispositive of the issue before us. We must now determine if the District Court's dismissal of the individual council members pursuant to § 2-9-305(5), MCA, was error.

¶86  The District Court relied on § 2-9-305(5), MCA, which provides:

> Recovery against a governmental entity under the provisions of parts 1 through 3 of this chapter constitutes a complete bar to any action or recovery of damages by the claimant, by reason of the same subject matter, against the employee whose negligence or wrongful act, error, or omission or other actionable conduct gave rise to the claim. In any such action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, unless the claim constitutes an exclusion provided in (b) through (d) of subsection (6).

¶87  We have had occasion to interpret and apply this statute. In *Story v. City of Bozeman* (1993), 259 Mont. 207, 856 P.2d 202, the jury awarded the plaintiff $850,000 in damages against the city for breach of contract and/or breach of the covenant of good faith and fair dealing, and also awarded $100,000 in damages against the city engineer for intentional interference with contractual relations. After determining the recovery against the engineer and the recovery against the city arose from the same subject matter, we held "the double recovery awarded by the jury is barred by the plain language of § 2-9-305(5), MCA," and

36

struck the $100,000 award against the city engineer from the judgment. *Story*, 259 Mont. at 221, 856 P.2d at 211.

¶88    All the counts alleged in Kiely's complaint and amended complaint turn on actions performed by the individually named defendants, while serving as members of the City Council. The council members' actions served as the factual basis for Kiely's claims for damages under § 76-3-625(1), MCA and § 1983, as well as for Kiely's appeal of the City Councils' final decisions pursuant to § 76-3-625(2), MCA. The recovery sought by Kiely against both Red Lodge and the City Council members arose out of the same subject matter, and because the intent behind § 2-9-305(5), MCA, is to prevent a plaintiff from recovering from both the governmental entity and the individuals acting on behalf of that entity for the same conduct, we conclude Kiely is barred from recovering awards against the individual council members, separate and in addition to the awards it recovers from Red Lodge.

¶89    Kiely argues the individual defendants cannot immunize themselves (i.e., acknowledge their conduct was within the scope of employment) without creating a conflict of interest. However, we conclude the first sentence of § 2-9-305(5), MCA, is on its face, a complete bar to holding the individual council members liable. *See Story*, 259 Mont. at 222, 856 P.2d at 211. Therefore, we will not address Kiely's arguments concerning the effects of the second sentence of § 2-9-305(5), MCA.

¶90    Although the District Court employed a slightly different analysis of § 2-9-305(5), MCA, it reached the same result as we do here, and we will uphold a court ruling if it is correct, regardless of the reasons given below for the result. *Schmasow v. Native American*

37

*Center*, 1999 MT 49, ¶ 12, 293 Mont. 382, ¶ 12, 978 P.2d 304, ¶ 12 (citations omitted).

Therefore, we hold the District Court did not err when it dismissed the individual defendants.

## Issue 6

¶91    **Did the District Court abuse its discretion regarding admission of evidence?**

¶92    Our standard of review of a district court's evidentiary rulings is abuse of discretion. *Finstad v. W.R. Grace & Co.*, 2000 MT 228, ¶ 43, 301 Mont. 240, ¶ 43, 8 P.3d 778, ¶ 43 (citing *Busta v. Columbus Hosp. Corp.* (1996), 276 Mont. 342, 353, 916 P.2d 122, 128). The district court has broad discretion to determine if evidence is admissible. Thus, absent an abuse of that discretion, this Court will not overturn the district court's determination. *Finstad*, ¶ 43. *See also Baldauf*, ¶ 41 (district court has broad discretion to determine whether evidence is relevant and admissible pursuant to the Montana Rules of Evidence). "The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Jarvenpaa v. Glacier Elec. Co-Op., Inc.*, 1998 MT 306, ¶ 13, 292 Mont. 118, ¶ 13, 970 P.2d 84, ¶ 13 (citation omitted).

¶93    Red Lodge argues the District Court erred by refusing to admit certain documents and testimony that demonstrated the reasons the City Council denied Kiely's application (i.e., minutes of April 15, 1999 meeting, and certain testimony of council members). Red Lodge also argues the court erred in admitting evidence of settlement negotiations and the resulting SIA, and in excluding evidence that Kiely's proposed subdivision did not meet the zoning requirements under the 1995 Subdivision Regulations. Finally, Red Lodge contends it was

38

reasonable for it to believe the ruling in *Town Pump, Inc. v. Board of Adjustment*, 1998 MT 294, 292 Mont. 6, 971 P.2d 349, permitted it to apply its 1997 Development Code retroactively, and that the District Court therefore erred in excluding evidence relating to the 1997 Development Code.

¶94    First, Red Lodge asserts the testimony regarding settlement negotiations and the resulting SIA were inadmissible under Rule 408, M.R.Evid.  The District Court held that it was not precluded from admitting evidence of the settlement negotiations because under § 76-3-608(5)(b), MCA, which required the governing body to consult with the subdivider and give due weight and consideration to the expressed preference of the subdivider, Red Lodge was statutorily mandated to negotiate.  We conclude the District Court did not err in admitting evidence from the settlement negotiations and resulting subdivision improvement agreement.

¶95    Rule 408, M.R.Evid., is not a complete bar on evidence concerning offers of compromise.  Rather, Rule 408, M.R.Evid., excludes only evidence that is being offered to prove liability or the validity of a claim or amount.  The rule specifically "does not require exclusion when the evidence is offered for another purpose . . . ."  Rule 408, M.R.Evid.  The testimony concerning settlement negotiations and the resulting SIA were not offered to prove liability or the validity of Kiely's claim, nor to prove the matter had been settled (i.e., to enforce the SIA).  Rather, Kiely offered the evidence to demonstrate the arbitrary and capricious nature of the decision of Red Lodge to adopt the SIA subject to seven new conditions.  Therefore, the evidence falls under the exception clause of Rule 408.  We

39

conclude the District Court did not abuse its discretion in admitting evidence of the negotiations and resulting SIA.

¶96     Second, we conclude the District Court did not abuse its discretion when it excluded the minutes of the April 15, 1999 City Council meeting, as well as testimony from individual council members, as offered by Red Lodge to explain the individual member's reasons for the denial.  The record is clear that Red Lodge violated § 76-3-620, MCA, by not issuing a written statement explaining the reasons for the denial and the evidence justifying the denial.  The council meeting minutes are not the equivalent of the written statement the council was statutorily required to issue, and cannot be used as a substitute.  Accordingly, the District Court did not abuse its discretion in excluding the minutes.

¶97     Nor were the after-the-fact opinions of individual council members as to the reasons for the denial relevant.  In an analogous situation, courts will not consider post-enactment statements of legislators because they are not part of the legislative history and accordingly, not part of the record.  *See Slaven v. BP America, Inc.* (9th Cir. 1992), 973 F.2d 1468, 1475; and *Hazardous Waste Treatment Council v. U.S. E.P.A.* (D.C. Cir. 1989), 886 F.2d 355, 365.  Therefore, we conclude it was not error for the trial court to exclude testimony from the individual council members as to their reasons for denying Kiely's preliminary application, since such testimony would constitute "post-decision" statements, which were not properly part of the record.

¶98     Third, we conclude the trial court did not abuse its discretion when it excluded evidence concerning zoning requirements. The trial court properly concluded that evidence

40

dealing with zoning was not relevant to the issue of whether Red Lodge acted arbitrarily or capriciously when it acted on Kiely's preliminary plat applications under the Subdivision and Platting Act.

¶99    Red Lodge also challenges the District Court's partial summary judgment ruling which concluded that the 1997 Development Code (which presumably addressed zoning issues) could not be applied retroactively. The District Court rejected Red Lodge's argument that our decision in *Town Pump* allowed Red Lodge to apply the 1997 Development Code to Kiely's preliminary plat application. We review a district court's interpretation of law to determine if it is correct. *Steinback*, ¶ 11.

¶**100**    Although *Town Pump* addressed issues similar to those presented here, this case is readily distinguishable on its facts. Here, an explicit provision of the Subdivision and Platting Act provided that "[r]eview and approval or disapproval of a subdivision . . . may occur only under those regulations in effect at the time an application for approval of a preliminary plat . . . is submitted to the governing body." Section 76-3-501(2), MCA. Thus, retroactive application of the 1997 Development Code to Kiely's May, 1996 preliminary plat application was expressly precluded by the statute. Accordingly, we conclude the District Court did not err in excluding the 1997 Development Code as evidence of local zoning regulations.

**Issue 7**

¶101    **Did the District Court err by not modifying the damage award?**

41

**¶102 The standard of review when reviewing an award of damages is whether the trial court abused its discretion**. *Sletteland v. Roberts*, 2000 MT 382, ¶ 36, 304 Mont. 21, ¶ 36, 16 P.3d 1062, ¶ 36 (**citing *Edington v. Creek Oil Co.* (1984), 213 Mont. 112, 127, 690 P.2d 970, 978). In all cases, damages must be reasonable. Section 27-1-302, MCA. "[A]n award must be reduced when it substantially exceeds that which the evidence can sustain." *Onstad v. Payless Shoesource*, 2000 MT 230, ¶ 50, 301 Mont. 259, ¶ 50, 9 P.3d 38, ¶ 50 (citing *Maurer v. Clausen Distributing Co.* (1996), 275 Mont. 229, 237, 912 P.2d 195, 199). "Only when the amount awarded is so grossly out of proportion to the injury as to shock the conscience will an appellate court intervene." *Onstad*, ¶ 50 (citation omitted). *See also*, *Frisnegger v. Gibson* (1979), 183 Mont. 57, 67, 598 P.2d 574, 580 (amount of damages awarded sufficiently based on record, did not shock the conscience, and was in effect approved by the district court when it denied motions for remittitur and new trial).**

¶103   Red Lodge argues that the trial court's order directing it to approve the preliminary application subject to the eighteen conditions eliminates the basis for much of the damage award, since the damages included amounts for property devaluation, future losses, and for costs associated with the project. Kiely contends the damages are not duplicative nor should they be extinguished upon the conditional approval of its application, arguing that "whether or not the subdivision was approved, Kiely experienced a loss." On appeal, Kiely asks this Court to affirm both the jury's damage award and the conditioned approval granted by the District Court.

¶104   During trial, Kiely presented evidence from a certified valuation analyst, who testified to several types of damages suffered by Kiely.  He testified that due to the delay in Red Lodge's decision making, Kiely suffered damages in the form of lost investment value of funds between October 1996 (when County Planning Board first approved Kiely's application) and the trial.  In addition, Kiely asserted that Red Lodge's delayed decision-making also resulted in devaluation of the property due to a decline in the real estate market between the years of 1996 and 1999.  The valuation analyst testified that the lost investment value of funds and devaluation of property damages would have been suffered regardless of the ultimate denial of application.  Kiely also presented several receipts for expenditures that included both start-up costs associated with the project and costs stemming from the continued application process with the city.  While Kiely claimed $179,000 in such costs, the jury awarded only $15,000.  Finally, Kiely also asserted that it suffered "Lost Future Investment Value," arguing that Red Lodge's delay in decision-making also caused an additional two-year increase in the development time due to issues with implementing the sewer system.  While the valuation analyst agreed that the Lost Future Investment Value may be somewhat affected by what relief Kiely was granted (i.e., conditioned approval), he stated Kiely would still have a loss because the development could have been done earlier if it had been properly approved.  Kiely asserted its Lost Future Investment Value to be $116,000; however, the jury awarded the sum of $97,170 for this element of damage.

¶105    Although the District Court did not address the issue of damages modification, we conclude that the testimony and evidence presented at trial support the conclusion that the conditioned approval of Kiely's application should not eliminate or reduce the jury's award of damages to Kiely. Moreover, the District Court was fully aware of the potential dilemma presented by Kiely's request for the two remedies under § 76-3-625(1), MCA (money damages), and § 76-3-625(2), MCA (appeal of a denial or conditional approval of a plat application). During a pretrial conference, the court discussed the potential for inconsistent remedies with the parties, **and ultimately designated the jury as an advisory jury on Kiely's appeal under § 76-3-625(2), MCA, while concluding that the issue of damages under § 76-3-625(1), MCA, would be determined by the jury.**

¶106    **The District Court, having heard all the evidence and the jury's verdict on damages, was cognitive of the possible overlap between the remedies, and was therefore in the best position to determine if the damages were excessive or duplicative.** *See Maddux v. Bunch* **(1990), 241 Mont. 61, 65, 784 P.2d 936, 939 (citing** *Tague v. John Caplice Co.* **(1903), 28 Mont. 51, 72 P. 297) (district court in best position to determine requirements of proof of punitive damages since it heard all evidence and observed witnesses). Therefore, we conclude that the District Court did not abuse its discretion by declining to adjust the damages awarded upon its order that Kiely's preliminary plat application be conditionally approved subject to the original eighteen conditions. Accordingly, the award of damages is affirmed.**

¶107    We summarize our holdings as follows:

(1) We dismiss Kiely's § 1983 claims and accordingly, vacate its § 1988 attorney's fees award;

(2) We affirm the District Court's instructions to the jury and the special verdict form;

(3) We affirm the District Court's order which vacated Red Lodge's denial of Kiely's preliminary plat application and directed the city to approve Kiely's preliminary plat application subject to the eighteen original conditions, with the three year approval period commencing as of the date of this Opinion;

(4) We affirm the District Court's partial summary judgment order dismissing the individual council members from this action;

(5) We affirm the District Court's evidentiary rulings;

(6) We affirm the District Court's ruling on summary judgment that Red Lodge was not entitled to retroactively apply the 1997 Development Code; and

(7) We affirm the award of damages.

Kiely now possesses preliminary plat approval, conditioned on the original eighteen provisions recommended by the County Planning Board, and may, if it chooses, proceed to apply for final plat approval according to § 76-3-611, MCA.

¶108   Affirmed in part and reversed in part.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER

45

Justice Jim Rice specially concurring.

¶109  I concur with the Court's dismissal of Kiely's § 1983 claims but not with the entirety of the Court's analysis.

¶110  The Court relies on *Jacobson v. Hannifin* (9th Cir. 1980), 627 F.2d 177, for the proposition that a statute which prohibits the government from acting "unreasonably" does not establish a legitimate claim of entitlement necessary to support a § 1983 claim. However, in my view, *Jacobson* is not persuasive authority for the Court's holding herein.

¶111  *Jacobson* involved the denial of a gaming license by the Nevada Gaming Commission. The Nevada statute governing the commission granted "full and absolute power and authority to deny any application for any cause deemed reasonable" to the commission. Nev. Rev. Stat. § 463.220(6). A broader grant of authority can hardly be imagined. Clearly, no protectable property interest, or "legitimate claim of entitlement," was created by the Nevada statute. Such *carte blanche* was not provided by the statutes at issue here.

¶112  Although the Court describes § 76-3-608, MCA, as only requiring the governing body to not act "unreasonably," a close review of that term within the full context of the statute provided in the Court's opinion reveals that the discretion granted thereunder is not unconstrained:

> [A] governing body may not unreasonably restrict a landowner's ability to develop land, but it is recognized that in some instances the unmitigated impacts of a proposed development may be unacceptable and will preclude approval of the plat.

46

Section 76-3-608(5)(a), MCA. "Restrict" and " preclude" are not equivalent terms within this provision. The power to place reasonable restrictions on the development does not, in and of itself, include the authority to preclude the proposed development. As the provision indicates, the "some instances" in which a development may be precluded altogether are only those in which unmitigated impacts exist and are found to be unacceptable. Even in those instances, the governing body may mitigate the unacceptable impacts and thereby eliminate these obstacles to approval of the development. Section 76-3-608(4), MCA. These provisions demonstrate that the governing body's duty to the applicant exceeds the mere avoidance of unreasonableness and requires earnest consideration of the landowner's plan.

¶113 Nonetheless, I do find sufficient discretion within the statute to defeat a claim of entitlement for purposes of a § 1983 claim. Section 76-3-608(4), MCA, does not require that the governing body approve mitigation of adverse impacts, stating only that it "may" do so. Without mitigation, a development's "unmitigated impacts" can preclude approval. The statute uses other qualifying language as well and cannot be read as mandating approval in the event a developer meets certain requirements.

¶114 The court in *Wallace v. Robinson* (7th Cir. 1991), 940 F.2d 243, offered an explanation of the entitlement that is necessary to establish a protectable liberty or property interest, drawing on many other cases which have addressed the issue:

> Does this [statutory] language create a "legitimate claim of entitlement"? If not, there is no constitutional liberty or property. [Citations omitted.] A "legitimate claim of entitlement" means more than an abstract desire. It is

instead an entitlement contingent on facts, something you hold unless prescribed conditions of its defeasance can be established. [Citations omitted.] Something "securely and durably yours . . . as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain". [Citations omitted.] How securely? Your entitlement must be "legally enforceable" [citations omitted]. Or, in the formulation of [*Kentucky Department of Corrections v. Thompson* (1989), 490 U.S. 454, 104 L.Ed.2d 506, 109 S.Ct. 1904] there must be "'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion."

*Wallace*, 940 F.2d at 246-47. Although somewhat unwieldy, *Wallace's* explanation is detailed and helpful. Under this analysis, the statutes at issue here clearly do not use mandatory language which assures an applicant of approval, and I know of no court decision which has found a claim of entitlement under statutory language which is even remotely similar to the statutes here. For these reasons, I concur with the Court's holding on this issue.

¶115 On all other issues, I also concur.


/S/ JIM RICE


48

Justice Terry N. Trieweiler concurring and dissenting.

¶116 I concur with the majority's resolution of issues numbered one through six. I dissent from the majority's resolution of issue seven. I would vacate the damage award and remand to the District Court for further determination of damages in light of the District Court's decision to order approval of the plaintiff's application pursuant to § 76-3-625(2), MCA.

¶117 While I agree with the discussion of the damage law set forth in the majority Opinion, I disagree that there was any rational basis on which the jury could determine reasonable damages in this case without knowing the ultimate outcome of the plaintiff's appeal from the City's denial of its preliminary plat application. In other words, whether the City's arbitrary and capricious denial was a final decision or was going to be vacated by the District Court would have a substantial impact on the actual damages sustained by the plaintiff. As the following instructions indicate, the jury was led to believe the denial was final.

¶118 In Instruction No. 12, the jury was instructed as follows:

> 11. On April 15, 1999, the Council held a special meeting and denied the Application for Preliminary Plat Approval. The Council's denial of the Application for Preliminary Plat Approval constitutes a <u>final</u> action, decision or order. Mont. Code Ann. § 76-3-625. [Emphasis added.]

¶119 In Instruction No. 13, the jury was again instructed that:

> You are instructed that the City of Red Lodge's September 10, 1997, conditioned approval, January 12, 1999 approval of the Subdivision Improvement Agreement and April 15, 1999 denial are <u>final</u> actions, decisions or orders. [Emphasis added.]

¶120 In Instruction No. 24, the jury was given the following advice regarding damages:

49

If you find the City acted arbitrarily or capriciously, then you should award Kiely Construction such sum as you believe will reasonably and fairly compensate it for any damages it has sustained, and is reasonably certain to sustain in the future, as a result of the September 10, 1997 conditional approval, the January 12, 1999 approval of the Subdivision Improvements Agreement and/or the April 15, 1999 denial.

The damages must be just and have a reasonable basis in the evidence. The damages need not be mathematically exact, but there must be enough evidence for you to make <u>a reasonable estimate of damages without speculation</u> or guesswork. Recovery cannot be denied for damages simply because they are difficult to determine. [Emphasis added.]

¶121   The jury awarded the following damages:

| Nature of Damages | | Amount |
|---|---|---|
| Lost investment value | | $100,000 |
| Property devaluation | | 80,000 |
| Costs expended | | 15,000 |
| Lost future investment value | | 97,170 |
| | TOTAL | $292,170 |

¶122   While there may have been an evidentiary basis for awarding some of these damages whether the effects of the City Council's decisions were permanent or only temporary, there is no way to know whether the jury's verdict was based on its assumption that the damages were temporary or permanent. Confusion about the meaning of the jury verdict is compounded by Instruction No. 36 in which the jury was instructed that if it found a violation of 42 U.S.C. § 1983, Kiely was entitled to damages for "[t]he reasonable value of the investment income lost and which will be lost in the future, property devaluation and out-of-pocket expenses." However, the jury was also instructed in No. 36 that "[i]f you find for Kiely Construction on its 42 U.S.C. § 1983 claim, but you find that Kiely Construction has

50

failed to prove actual damages, you shall return an award of nominal damages not to exceed $1.00."

¶123   The jury did find for Kiely on its 1983 claim but apparently found that it had not proven actual damages for investment income lost, property devaluation and out-of-pocket expenses.  Therefore, it returned a verdict for violation of Kiely's civil rights in the amount of one dollar.  The jury's failure to find damages for violation of Kiely's civil rights is totally inconsistent with its earlier determination that he had sustained specific losses for those elements of damage due to the City's arbitrary and capricious denial of his preliminary plat application.

¶124   After considering all of the circumstances, I would conclude that the jury's damage verdict was uninformed and necessarily speculative because of the posture of the case when the damage issue was submitted to the jury and the subsequent relief granted to Kiely which necessarily mitigated much of the damage on which the jury's verdict may have been based.

¶125   There is no way to know from the record whether the District Court took into account the extent to which Kiely's actual damages were mitigated by its subsequent relief.  Following the jury's award of damages, but prior to the District Court's judgment granting Kiely conditional approval, the City argued that any remedy granted by the District Court pursuant to § 76-3-625(2), MCA, other than denial, should result in a reduction of the damage award.  However, the District Court did not address or appear to consider this issue in its Findings of Fact, Conclusions of Law and Order.

¶126 For these reasons, I concur in part with the majority Opinion but dissent from that part of the Opinion which affirms both the jury's award of damages and the refusal of the District Court to reduce those damages in light of its affirmative relief granted to the plaintiff pursuant to § 76-3-625(2), MCA.

/S/ TERRY N. TRIEWEILER

Justice W. William Leaphart joins in the foregoing concurrence/dissent.

/S/ W. WILLIAM LEAPHART