FILED

02/18/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0108

DA 24-0108

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 34

PROTECT THE GALLATIN RIVER,

      Plaintiff and Appellant,

  v.

GALLATIN COUNTY, DEPARTMENT OF
PLANNING AND COMMUNITY DEVELOPMENT
GALLATIN COUNTY COMMISSION, and
JEFF and JIRINA PFEIEL,

      Defendants and Appellees.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
                  In and For the County of Gallatin, Cause No. DV-21-1335(A)
                  Honorable Peter Ohman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            David K. W. Wilson, Jr., Robert Farris-Olsen, Morrison, Sherwood,
            Wilson & Deola, PLLP, Helena, Montana

      For Appellees Gallatin County Department of Planning and Community
      Development and Gallatin County Commission:

            LeeAnn Certain, Gallatin County Attorney's Office, Bozeman,
            Montana

      For Appellees Jeff and Jirina Pfeil:

            Brian K. Gallik, Gallik & Bremer, P.C., Bozeman, Montana

            Matthew W. Williams, MW Law Firm, PLLC, Bozeman, Montana

Submitted on Briefs:  September 25, 2024

Decided:  February 18, 2025

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1    Plaintiff and Appellant Protect the Gallatin River (PTGR) appeals from the November 13, 2023 Order re[:] Motions for Summary Judgment issued by the Eighteenth Judicial District Court, Gallatin County.  The District Court's order resolved competing summary judgment motions brought by PTGR; Defendant and Appellee Gallatin County, Department of Planning and Community Development (Gallatin County); Defendant and Appellee Gallatin County Commission (Commission); and Defendants and Appellees Jeff and Jirina Pfeil (the Pfeils), relating to the Gallatin County Floodplain Administrator's approval of a floodplain permit for the Pfeils' proposed development of the Riverbend Glamping Getaway project located on an island in the Gallatin River near Gallatin Gateway.

¶2    We address the following restated issues on appeal:

*1.  Did the District Court err in finding the Floodplain Administrator did not violate the Plaintiff's right to participate?*

*2.  Did the District Court err in finding the Floodplain Administrator's participation in the appeal process before the Commission was appropriate?*

*3.  Did the District Court err when it affirmed the Commission's determination that the Floodplain Administrator's decision complied with the Floodplain Regulations?*

¶3    We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    The Pfeils own unzoned land on an island in the Gallatin River near Gallatin Gateway, which they are seeking to develop into a glamping resort known as the Riverbend Glamping Getaway (Riverbend).  The project seeks to develop a campground of 58 non-

3

permanent accommodation structures—Conestoga wagons and tipis—constructed on wheeled frames which could be moved in the event of a flood, as well as improving an already-existing building and installing utilities, access roads, and a wastewater lift station. The Montana Department of Revenue assigned a market value of $15,010 to the existing building, which the Pfeils sought to remodel at a cost of $6,550. Under the 2017 Gallatin County Floodplain Regulations (GCFR),[1] the proposed remodel did not qualify as a "Substantial Improvement" because the cost of the remodel did not "equal[] or exceed[] fifty percent of the market value of the Structure[.]" GCFR § 2.01. Slightly over half of the Riverbend project's proposed campsites are located within the floodplain pursuant to a 2019 Letter of Map Revision Floodway Determination issued by the Federal Emergency Management Agency (FEMA). The Pfeils submitted an application for a floodplain permit, including supporting documentation, to the Gallatin County Floodplain Administrator, Sean O'Callaghan, on January 3, 2020. The Pfeils described the quick-disconnect sewer connection for the campsites, which would involve capping and sealing the connection in the event of a flood. O'Callaghan reviewed the initial application from the Pfeils and requested further information.

¶5     Gallatin County published notice of the application in the Bozeman Daily Chronicle on December 6 and 13, 2020. The notice contained a link to the Pfeils' application, noted the application could also be viewed in person at the Gallatin County Planning Department, and informed the public that written comments on the application would be accepted

---

[1] Unless otherwise noted, citations to the GCFR refer to the 2017 version.

through December 28, 2020. Notice was also sent via mail to adjoining landowners and via email to several Gallatin Gateway community members, including PTGR members Peggy Lehmann and Megan Buecking, as well as to the Montana Department of Natural Resources and Conservation (DNRC) Floodplain Management Section. On December 6, 2020, PTGR requested the public comment period be extended, which O'Callaghan denied on December 8, 2020, reasoning that he had already provided for a longer public comment period than required under the GCFR. GCFR § 4.01(H) provided that the "notice shall provide a reasonable period of time, not less than 15 days, for interested parties to submit comments on the proposed activity." Hundreds of public comments were submitted during the public comment period, as well as a petition from PTGR containing 1,062 signatures and 255 unique comments from petition signers. Nearly all of the public comments received were against the Riverbend project and urged O'Callaghan to deny the floodplain permit. O'Callaghan forwarded the public comments to the Pfeils and requested their response. The Pfeils submitted their response and additional information to O'Callaghan on May 12, 2021. Over the next several months, the Pfeils and O'Callaghan regularly exchanged letters, emails, and other information necessary for O'Callaghan's review of the application.

¶6 On November 15, 2021, O'Callaghan issued his Findings of Fact and Order, approving the Pfeils' floodplain permit subject to 15 enumerated conditions. In accordance with GCFR § 4.04(C), which allows an aggrieved person to appeal the decision of the Floodplain Administrator to the Commission by alleging "the Floodplain Administrator's Decision was an erroneous interpretation or application of [the GCFR] or relevant State

5

and Federal laws," PTGR (and other parties) appealed O'Callaghan's approval of the floodplain permit to the Commission. On February 4, 2022, the Pfeils filed Pfeil[s'] Objections to Applellants' [sic] Extra-Record Evidence and Motion to Strike, objecting to exhibits and documents attached to the various parties' appeals to the Commission, including a report prepared by Lucas Osborne, P.E., of HydroSolutions, Inc., which was attached as Exhibit A to PTGR's appeal. The parties fully briefed the motion to strike and the Commission held a hearing on the motion on March 8, 2022. At that hearing, the Commission granted the motion in part, striking certain documents presented by various appellants which were not part of the administrative record before the Floodplain Administrator, including the Osborne report. The Commission's written Findings of Fact, Conclusions of Law, and Order Regarding Motion to Strike followed on March 22, 2022.

¶7 Public comment on the appeals was accepted between March 6 and April 7, 2022. In addition, notice of a public hearing on the appeals was published in the Bozeman Daily Chronicle on March 13, March 20, and April 6, 2022. Notice was also sent via certified mail to adjoining landowners on March 8, 2022. On March 25, 2022, the Pfeils filed a brief responding to the appeals. On March 30, 2022, O'Callaghan provided the Commission with a Staff Report concerning the appeals. In the report, O'Callaghan set forth a table entitled "Floodplain Administrator Response to Appeals," in which he identifies the errors asserted in the various appellants' appeals and his response. The table cited to where both the asserted error and the information used in his response to each allegation were located by Bates-stamped page in the, at that point, nearly 1,500-page administrative record. The Commission held a public hearing on the appeals on April 8,

6

2022, at which it heard from the parties appealing, O'Callaghan, the Pfeils, and the public. Several of the appealing parties requested the Commission, if it were to uphold the permit, add a condition requiring Riverbend to operate seasonally from July 1 to November 1 each year. The Commission discussed those requests at length before unanimously voting to modify the floodplain permit by adding a condition requiring Riverbend to remove all accommodations in the floodplain and cap and seal the water and sewer utilities at those sites from November 1 to July 1 each year. In all other respects, including the 15 conditions imposed by O'Callaghan, the Commission affirmed the permit.

¶8 After the April 8, 2022 hearing, O'Callaghan prepared a draft Findings of Fact, Conclusions of Law, and Order for the Commission. The Pfeils submitted a Notice of Potential Error in Proposed Conclusions, related to whether the proposed condition required the water and sewer utilities to be "turned off" or only "capped." The Commission held another public hearing on May 17, 2022, regarding the draft Findings and Conclusions. The Commission unanimously voted to approve the draft Findings and Conclusions with the modification that Riverbend remove all accommodations in the floodplain and cap and seal the water and sewer utilities at those sites from November 1 to July 1 each year. The Commission signed the written Findings of Fact, Conclusions of Law, and Order on May 26, 2022.

¶9 PTGR appealed the Commission's affirmation of the floodplain permit to the District Court. None of the other parties which appealed to the Commission below either joined PTGR's appeal or filed one of their own. The Pfeils also appealed the Commission's decision to the District Court, challenging the Commission's modification of the permit to

7

limit use of the property between November 1 and July 1 each year and the Floodplain Administrator's application of the 2021 Gallatin County Floodplain Regulations to their permit extension request. PTGR and the Pfeils' appeals were consolidated in the District Court.

¶10 PTGR, the Pfeils, and Gallatin County each filed motions for summary judgment relating to the claims raised in the appeals. After the competing motions were fully briefed by the parties, the District Court held oral argument at a hearing on June 7, 2023. The District Court issued its Order re[:] Motions for Summary Judgment on November 13, 2023. In its order, the court denied PTGR's motions for partial summary judgment relating to its own complaint; granted Gallatin County and the Pfeils' motions for summary judgment relating to PTGR's complaint; granted Gallatin County and PTGR's motion for summary judgment relating to the Pfeils' claim the Commission erred by adding the seasonal use restriction to the permit; and denied Gallatin County and PTGR's motions for summary judgment relating to the Pfeils' claim the Floodplain Administrator erred by applying the 2021 Gallatin County Floodplain Regulations to the permit extension and granted summary judgment to the Pfeils on that issue. Pursuant to a stipulation, Gallatin County and the Pfeils agreed not to appeal. Gallatin County and the Pfeils further stipulated that "[a]ctions taken pursuant to Floodplain Permit #F2020-015 and extensions of said Permit are subject to the 2023 Gallatin County Floodplain Hazard Management Regulations (eff. May 4, 2023)."

¶11 PTGR appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶12 We review a district court's grant or denial of summary judgment de novo, applying the same criteria as M. R. Civ. P. 56. *Hudson v. Irwin*, 2018 MT 8, ¶ 12, 390 Mont. 138, 408 P.3d 1283. Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Hudson*, ¶ 12.

¶13 This proceeding does not involve a contested case under the Montana Administrative Procedure Act. On appeal from the Floodplain Administrator's decision to issue the floodplain permit, the Commission was to determine whether "the Floodplain Administrator's Decision was an erroneous interpretation or application of [the GCFR] or relevant State and Federal laws." GCFR § 4.04(C). We review non-MAPA administrative decisions to determine whether the decision was arbitrary, capricious, unlawful, or not supported by substantial evidence. *Mont. Env't Info. Ctr. v. Mont. Dep't of Env't Quality*, 2019 MT 213, ¶ 19, 397 Mont. 161, 451 P.3d 493 (collecting cases) (*MEIC 2019*). Our review of a non-MAPA administrative decision is "narrow and limited to: (1) whether the agency erred in law; or (2) whether the agency's decision is wholly unsupported by the evidence or clearly arbitrary or capricious." *MEIC 2019*, ¶ 21 (collecting cases).

## DISCUSSION

¶14 *1. Did the District Court err in finding the Floodplain Administrator did not violate the Plaintiff's right to participate?*

¶15 As an initial matter, we note PTGR's complaint in the District Court alleged its constitutional and statutory right to participate was violated in two ways: first, that the

initial public comment period should have been extended due to the holiday season and Covid-19 pandemic; and second, that the County should have re-opened the public comment period after the Pfeils' application was complete and before the Floodplain Administrator made his final decision. On appeal, PTGR has limited its claim to whether the County should have re-opened public comment. We therefore need not address the propriety of the Floodplain Administrator declining to extend the initial public comment period, but briefly note that O'Callaghan provided an initial public comment period longer than required by the GCFR and received hundreds of public comments as well as a petition with over 1,000 signatures.

¶16    "The public has the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law." Mont. Const. art. II, § 8. "The Legislature has codified guidelines to protect the Article II, Section 8, guarantees at § 2-3-101, et seq., MCA." *Bryan v. Yellowstone Cnty. Elementary Sch. Dist. No. 2*, 2002 MT 264, ¶ 24, 312 Mont. 257, 60 P.3d 381. PTGR asserts it was not given a reasonable opportunity to participate because the public comment period closed nearly eleven months prior to the Floodplain Administrator's November 15, 2021, conditional issuance of the Pfeils' requested floodplain permit. The County and Pfeils contend the public had a reasonable opportunity to participate in this matter as O'Callaghan provided more time for public comment than required by the GCFR, he received voluminous public comment during that time, and he was not required to continuously accept public comment while the application was pending.

10

¶17 Our review of the record in this case convinces us that the Floodplain Administrator did not act arbitrarily or capriciously by not re-opening public comment prior to issuing his permit decision. "An agency decision is not arbitrary or capricious merely because the record contains inconsistent evidence or evidence which might support a different result. A decision is arbitrary and capricious only if apparently random, unreasonable or seemingly unmotivated based on the existing record." *Clark Fork Coal. v. Mont. Dep't of Nat. Res. & Conservation*, 2021 MT 44, ¶ 34, 403 Mont. 225, 481 P.3d 198 (citing *Mont. Wildlife Fed'n v. Mont. Bd. of Oil & Gas Conservation*, 2012 MT 128, ¶ 25, 365 Mont. 232, 280 P.3d 877) (internal quotation marks and citation omitted) (*Clark Fork Coal. 2021*). While it is true that nearly eleven months passed between the close of the public comment period and the Administrator's ultimate conditional issuance of the floodplain permit, his decision to not continuously re-open public comment was not "random, unreasonable, or seemingly unmotivated based on the existing record." *Clark Fork Coal. 2021*, ¶ 34. O'Callaghan provided a longer public comment period than required by the GCFR, properly notified adjoining landowners, and went out of his way to notify interested community members, including members of PTGR. After receiving hundreds of public comments (as well as PTGR's petition with over 1,000 signatures and 255 additional unique comments) during the enlarged public comment period, O'Callaghan sent the Pfeils a letter listing deficiencies in their application and required them to respond to the public comment received. The Pfeils ultimately responded to O'Callaghan's letter approximately four months later. No portion of the GCFR required O'Callaghan to then re-open public comment to allow the public to comment on the Pfeils' response to public comments,

11

thereby creating an endless cycle of comments and responses. Regarding changes to the Pfeils' application in response to O'Callaghan's January 2021 deficiency letter, we are not convinced that it was unreasonable to not re-open public comment. The scope of the Riverbend project was actually narrowed in response, and the Administrator had already received hundreds of public comments urging him not to approve the project. The manner in which O'Callaghan approached public comment—allowing for a longer public comment period than required under the GCFR but not continuously re-opening public comment until his final decision—was neither arbitrary nor capricious. The public, including PTGR, was provided with a reasonable opportunity to participate in the Floodplain Administrator's decision and O'Callaghan's decision did not violate PTGR's constitutional or statutory participation rights. We additionally note that the public continued to participate during the appeal process to the Commission, as there was notice and public comment at the multiple hearings the Commission held prior to upholding, with a seasonal use restriction modification suggested by the public during the appeals process, O'Callaghan's decision to issue the floodplain permit.

¶18     The Floodplain Administrator did not act arbitrarily or capriciously by not re-opening public comment while the Pfeils' application was pending and prior to issuing his decision. The District Court did not err by granting summary judgment in favor of the County and Pfeils on this issue.

¶19     2. *Did the District Court err in finding the Floodplain Administrator's participation in the appeal process before the Commission was appropriate?*

12

¶20 PTGR asserts it was improper for O'Callaghan to participate in the appeal process before the Commission, where he drafted a staff report for the Commission, presented to the Commission at a public hearing, and later drafted the Commission's final written decision upholding, with an additional seasonal use restriction, his decision to issue the floodplain permit. PTGR contends O'Callaghan was improperly allowed to provide post hoc rationalizations to the Commission during this process. Gallatin County and the Pfeils assert O'Callaghan's participation before the Commission was appropriate and lawful as he did not present new evidence or provide the Commission with post hoc rationalizations of his decision.

¶21 The District Court reviewed the administrative record and determined O'Callaghan's "involvement did not serve to re-evaluate or provide a post-hoc rationalization for his decision." We agree. O'Callaghan's staff report essentially provided the Commission with a roadmap for navigating the voluminous administrative record before it on appeal. The table identified the numerous appealed issues and where O'Callaghan's decision addressed them—with citations to both in the administrative record. PTGR takes issue with what it believes are inappropriate opinions—such as that he disagrees with the position of the appellants—provided by O'Callaghan in the staff report and while presenting to the Commission. We do not find the statements PTGR complains of rise to the level of prohibited post hoc rationalizations we have previously held to not be properly part of the record. *See Kiely Constr. L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 97, 312 Mont. 52, 57 P.3d 836. In *Kiely*, we upheld a district court's exclusion of testimony from individual council members as to their reasons for denying a

13

preliminary subdivision application sought by Kiely. *Kiely*, ¶ 97. We found the proffered opinion testimony of those council members, when the City of Red Lodge "violated § 76-3-620, MCA, by not issuing a written statement explaining the reasons for the denial and the evidence justifying the denial" of Kiely's requested permit "would constitute 'post-decision' statements, which were not properly part of record." *Kiely*, ¶¶ 96-97. The situation here is markedly different than that of *Kiely*, as the permit issued by the Floodplain Administrator contained 23 pages of his detailed reasoning—including specifically responding to issues raised in public comments and noting he was considering the Pfeils' response to public comments as well. The permit itself provides the Floodplain Administrator's reasons for issuance of the permit and the evidence justifying it. O'Callaghan's staff report, which was provided to assist the Commission in navigating the large administrative record and provided detailed citations to such, was not a prohibited post-decision statement. The same is true of O'Callaghan's presentation to the Commission at a public hearing. The District Court reviewed a recording of the hearing and "identified no instance where the Administrator referred to extra-record evidence or offered after the fact positions regarding the Permit when making his presentation." We have done the same, and reach the same conclusion. Neither the staff report nor O'Callaghan's presentation constitute post hoc rationalizations of his decision and the Commission did not abuse its discretion by allowing them.

¶22 We also find O'Callaghan drafting the written Findings of Fact, Conclusions of Law, and Order, as he was directed to do by the Commission, to be neither inappropriate nor unlawful. The Commission's ultimate May 26, 2022 Findings of Fact, Conclusions of

14

Law, and Order, issued after yet another public hearing on the draft version, incorporate the Commission's additional verbal findings of fact from the public hearing and determined O'Callaghan erred by not imposing a seasonal use restriction. PTGR's assertion that O'Callaghan's "involvement effectively removed any semblance of the Commission being a neutral arbiter of the appeal of the decision he made" is simply not persuasive in the situation where the Commission did not simply uphold the floodplain permit, but modified it because the Commission determined O'Callaghan erred regarding the seasonal use restriction after receiving extensive public testimony at three public hearings.

¶23 Finally, PTGR's proclamation that "[t]he 'appeal process' would serve no appellate purpose if it were just another chance for the Administrator to buttress his own work" is pure hyperbole and flatly contradicted by the fact that the appeal process in this case resulted in a material change to the floodplain permit—the imposition of a seasonal use restriction on the Riverbend project—a change PTGR requested on appeal to the Commission. The Floodplain Administrator's participation before the Commission was neither inappropriate nor unlawful. The District Court did not err by granting summary judgment in favor of the County and Pfeils on this issue.

¶24 3. *Did the District Court err when it affirmed the Commission's determination that the Floodplain Administrator's decision complied with the Floodplain Regulations?*

¶25 PTGR asserts the Floodplain Administrator erroneously interpreted the GCFR and his authority under the GCFR when he approved the Pfeils' floodplain permit. PTGR asserts O'Callaghan "should have . . . construe[d] his powers under the Floodplain Regulations in the broadest possible manner to protect natural resources from damaging

15

floods," and both the Commission and District Court erred when they deferred to O'Callaghan's interpretation of his own power under the GCFR. The District Court found "that the Administrator's decision with respect to the Permit implicates substantial expertise" and was entitled to deference, that O'Callaghan did not err in his interpretation and application of the GCFR, and that the Commission's decision to uphold O'Callaghan's decision was not an abuse of discretion. We agree with the District Court.

¶26 Gallatin County has authority to manage floodways delegated by the State pursuant to the Montana Floodplain and Floodway Management Act, Title 76, chapter 5, MCA. Gallatin County also must comply with further statutory requirements for the County to continue participating in the National Flood Insurance Program. The Floodplain Administrator is accordingly tasked with reviewing applications to determine compliance with the GCFR, state laws, federal laws, and local codes. The Floodplain Administrator is required to have "requisite knowledge and training to act as Floodplain Administrator," GCFR § 4.01(A), which involves substantial expertise regarding floodplain land and water use management practices.

¶27 This Court "is not comprised of hydrologists, geologists, or engineers," and we recognize the task of a floodplain administrator to protect public health, minimize flood losses, and manage the wise use of a floodplain "requires significant technical and scientific expertise beyond the grasp of the Court." *MEIC 2019*, ¶ 20. We also recognize the judiciary's "inherent power to review administrative decisions and to interpret the law." *MEIC 2019*, ¶ 20 (citation omitted). "An agency's interpretation of its rule is afforded great weight, and the court should defer to that interpretation unless it is plainly inconsistent

16

with the spirit of the rule. The agency's interpretation of the rule will be sustained so long as it lies within the range of reasonable interpretation permitted by the wording. Conversely, of course, neither this Court nor the district court must defer to an incorrect agency decision." *Clark Fork Coal. v. Mont. Dep't of Env't Quality*, 2008 MT 407, ¶ 20, 347 Mont. 197, 197 P.3d 482 (internal citations omitted; collecting cases) (*Clark Fork Coal. 2008*).

¶28 PTGR asserts that O'Callaghan was required to interpret his powers under the GCFR "in the broadest possible manner," essentially arguing that he should have denied the project because it is undisputed that the Riverbend project area will, at some point, flood. But O'Callaghan, as the Floodplain Administrator, is the one tasked with interpreting his powers under the GCFR, not PTGR. And he conducted a thorough and searching analysis of the Pfeils' application, addressing the GCFR's required and additional considerations, public comments, and issues raised he determined were outside the scope of the project, before approving the application with 15 conditions. O'Callaghan set forth his detailed reasoning as it related to specific subsections of the GCFR. While PTGR takes issue with some of his reasoning and posits the evidence could support a different result, under the arbitrary and capricious standard neither the Commission nor this Court are permitted to reverse simply because the record contains evidence which might support a different result. *Kiely*, ¶ 69. O'Callaghan's detailed permit is certainly not random, unreasonable, or seemingly unmotivated, so reversal under the arbitrary and capricious standard is unwarranted. *Kiely*, ¶ 69. Furthermore, the Commission, when it upheld the issuance of the permit, added a seasonal use restriction—one which was

17

requested by PTGR and other appellants before the Commission. The permitting process was not random or unreasonable, but undertaken with great diligence on the part of O'Callaghan and the Commission, who both received substantial public input.

¶29 We recognize the Riverbend project faces substantial public opposition. Commissioner Skinner, after the Commission unanimously affirmed the issuance of the permit as modified by the seasonal use restriction, succinctly stated, "I generally agree with public comment. I don't think this is a good place for this kind of development, but that's not what we are determining here and that's, we don't have the regulations. We don't have zoning or the regulations to restrict it." Put simply, "is this a good idea?" was not the question before the Floodplain Administrator when he approved the permit or the Commission on appeal—the question was "does the application comply with the GCFR?" "When a district court or this Court reviews an action under the 'arbitrary and capricious' standard, a reversal of the appealed ruling is not permitted 'merely because the record contains inconsistent evidence or evidence which might support a different result. Rather, the decision being challenged must appear to be random, unreasonable, or seemingly unmotivated, based on the existing record.'" *Kiely*, ¶ 69 (quoting *Silva v. City of Columbia Falls*, 258 Mont. 329, 335, 852 P.2d 671, 675 (1993)). Like the District Court, we cannot reach such a conclusion regarding the Commission's modified affirmance of the Floodplain Administrator's permit approval. Accordingly, the District Court's summary judgment orders are affirmed.

**CONCLUSION**

¶30    Neither the Floodplain Administrator's issuance of the floodplain permit for the Riverbend project nor the Commission's modified affirmance of the permit were an abuse of discretion and the District Court's summary judgment orders were correct.

¶31    Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE